The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Lawrence B. Shuping, Jr. and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, or to amend the Opinion and Award, except for minor technical and grammatical changes throughout and the addition of new Findings of Fact 22 and 23.
Plaintiff's Motion to the Full Commission for a new evidentiary hearing is DENIED.
* * * * * * * * * * *
Prior to the hearing before Deputy Commissioner Shuping on 24 September 1994, the parties entered into a Pre-Trial Agreement, which is incorporated herein by the Full Commission, and where they agreed to a number of factual and jurisdictional stipulations, including medical records which were attached to the document. Subsequent to the hearing on said date, the parties entered into additional stipulations regarding, (a) group disability benefits received by plaintiff, and related materials denominated as Plaintiff's Exhibit #1; (b) the fact that at the time of her injury plaintiff earned a sufficient average weekly wage so as to entitle her to the applicable maximum compensation rate.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Plaintiff, at the time of the hearing before Deputy Commissioner Shuping, was a fifty-one year old female with a high school education. All her prior work experience has been in the textile trade and she is unable to return to this type of work because of the permanent back injury sustained on 24 April 1992; but rather, is only capable of sedentary work involving sitting most of the time and only occasionally standing and walking and (involving) not lifting more than ten pounds.
2. In 1960 plaintiff entered the same trade as a sewing machine operator at Gilliard Manufacturing Company. After seven years at Gilliard Manufacturing Company she worked in a similar capacity at Gaylord Hosiery Mill for nine years, until becoming employed as a supervisor at Bates Nightwear's Troy Manufacturing Plant. Plaintiff was subsequently promoted to head supervisor, then assistant manager and finally plant manager before being transferred to a managerial position at its Greensboro plant.
3. At the time of her injury plaintiff was plant manager at defendant-employer's sleepwear manufacturing plant and worked there a total of five years. The facility was a small one only employing forty people, and as plant manager plaintiff was not only responsible for handling the premises' paperwork, but for continually walking the manufacturing floor to oversee production as well as on occasion operating sewing machines and inspecting goods when bad quality merchandise was being produced. This required her to reach down and pick up bundles of work and a time or two had to even unload trucks, all of which involves the type of non-sedentary work she is no longer capable of performing.
4. Although in December of 1989 and again two years later plaintiff was treated at Eastern Carolina Neurosurgical Associates, Inc., because of episodes of low back pain due to the underlying osteoarthritis and degenerative disc disease in her lumbar spine, she did not experience any associated leg pain, recovered from the first episode with medication and the second with medication and physical therapy. Further, plaintiff did not miss any time from work following either episode and was not only able to continue regularly working until her fall at work on 24 April 1992, but prior to the same fall had not experienced a disc herniation in her lumbosacral spine requiring surgery and manifested by the back and right leg pain she developed after the same fall.
In November of 1990, however, plaintiff had undergone corrective surgery as a result of sustaining a herniated cervical disc, which was performed by Dr. K. Stuart Lee, a neurosurgeon associated with the same Eastern Carolina Neurosurgical Associates, Inc., and was able to return to work in January of 1991 after her neck surgery.
5. On 24 April 1992 while walking around the floor checking the quality of work as part of her duly assigned ordinary employment duties as plant manager, plaintiff slipped and fell on a piece of plastic. She landed on her buttocks and sustained the disabling, and otherwise compensable, back injury giving rise hereto which was manifested by back and right leg pain. Plaintiff's injury occurring on 24 April 1992 also materially aggravated the existing, but then non-incapacitating osteoarthritis and degenerative disc disease in her lumbosacral spine resulting in a disc protrusion at the L4-L5 level of her lumbosacral spine, proximately contributing to her disability and ultimately requiring corrective surgery at the affected level when she developed a herniated disc at the same level due to the natural progression of her disc injury.
6. Despite the involved back injury, plaintiff was able to complete the work day and return to work the following Monday, but because of having numbness extending down the right leg to her toes sought medical treatment from the company physician and her regular doctor, Dr. Troutman, as well, and he referred her back to Dr. Lee at Eastern Carolina Neurosurgical Associates, who had performed neck surgery in 1990 and in 1991 treated her second episode of low back pain.
7. Dr. Lee provided a conservative course of treatment, consisting of medication, physical therapy and taking plaintiff out of work for several weeks, followed by gradual return to work on a half day basis in July of that year before allowing her to return to full-time work in October. However, defendant-employer continued to pay her regular salary during the period she was out of work.
8. Although the same conservative treatment relieved the nerve root irritation at the affected L4-L5 level temporarily resulting in a resolution of her right leg pain enabling plaintiff to return to work, she continued to experience progressively worsening back pain from the time of her 24 April 1992 injury up until her return to work and thereafter.
9. The natural course of disc injuries is for them to progressively worsen over time not only resulting in recurrences of nerve root irritation manifested by leg pain and a tendency for the affected leg to give way, causing a fall. Plaintiff experienced this twice due to the progression of the disc injury sustained when she fell at work on 24 April 1992, which in turn caused further nerve root irritation or compression. This same condition is subject to being exacerbated by long periods of sitting as similarly occurred in plaintiff's case when she drove three hours to a friend's home in Mt. Gilead on 12 February 1993 aggravating her progressively worsening back condition.
10. Despite progressively worsening back pain that physically limited her activities plaintiff was able to continue regularly working for defendant-employer until 12 February 1993.
11. On 12 February 1993 plaintiff drove to Mt. Gilead to visit a friend, requiring her to ride in a car for three hours which aggravated the involved back injury. Due to her increased back pain, plaintiff and her friend had to stop several times during the trip. The automobile trip plaintiff undertook on 12 February 1993 resulted in a reoccurrence of nerve root irritation of the L4-L5 disc originally injured on 24 April 1992, which in turn caused the right leg to become numb, and her to fall when she attempted to exit the car upon arriving at Mt. Gilead. The following morning, plaintiff's right leg gave way under similar circumstances while she was attempting to take a shower.
12. The recurrence of plaintiff's disabling back and right leg pain on and after 12 February 1993 was a direct and natural result of the further progression of the disc injury sustained when she fell at work on 24 April 1992 aggravating the underlying, but then non-incapacitating osteoarthritis and degenerative disc disease at the affected L4-L5 level of her lumbosacral spine proximately contributing to her ultimate disability.
13. After her leg gave way a second time in the shower because of the recurrence of her disabling back and right leg pain from the involved back injury, plaintiff sought medical treatment at the local emergency room and was subsequently referred to Dr. James Rice, a Southern Pines orthopedic surgeon. Dr. Rice provided a conservative course of treatment, including epidural steroid injections, and plaintiff remained under his care until returning to Dr. Lee on 21 April 1993, who in July of that year performed corrective surgery for the disc herniation that she sustained as a result of falling at work on 24 April 1992 in the nature of a bilateral laminectomy and partial foraminotomy at the L4-L5 level decompressing the L5 nerve root.
14. Although the corrective surgery improved her right leg pain and numbness, plaintiff continues to experience some pain and numbness in her right leg as well as back pain.
15. Plaintiff ultimately reached maximum medical improvement and/or the end of the healing period from and following her 24 April 1992 back injury and the corrective surgery necessitated thereby on or about 23 March 1994, at which time she retained a fifteen (15) percent permanent partial disability to the back as a result of the same. Because of her permanent back injury, plaintiff is unable to return to her regular plant manager's job for defendant-employer or the same type of textile work she has always done. Plaintiff is only capable of sedentary work within the limitations described in Finding of Fact (1) herein above.
16. Although plaintiff has attempted to obtain the type of lighter sedentary work required by her permanent back injury, she has not yet been successful in finding it.
17. Defendants have not offered suitable sedentary work or engaged the services of a vocational rehabilitation specialist to assist plaintiff in obtaining a job. Rather, defendant-employer terminated her from its employ altogether on 6 March 1993 and defendant-carrier denied liability for her continuing total disability since 12 February 1993. Further, there is no evidence that sedentary work is currently available for someone of plaintiff's age, education, background and work experience, which has always involved employment in the textile trade and she is no longer capable of because of the permanent physical limitations of her permanent back injury — much less that she can obtain such work.
18. During her initial two weeks out of work defendant-employer continued plaintiff's full salary, which was neither due and payable under the Workers' Compensation Act because of the same employer's denial of liability for the period of disability that began on 13 February 1993 nor the type of benefit that plaintiff had earned such as the accumulated compensatory time, vacation and sick leave referred to in theEstes v. North Carolina State University case (infra) or the severance pay in the instant one, which had nothing to do with the Workers' Compensation Act and were not analogous to payments under a disability and sickness plan. Rather, these payments involved the wages plaintiff would have been earning had her 24 April 1992 back injury not become disabling on 12 February 1993, thereby entitling defendants to a credit for the salary so that plaintiff does not receive a double recovery.
19. On 6 March 1993, however, plaintiff was terminated from defendant-employer's employ and according to its policy the same employer paid her six weeks severance pay. Although the involved severance payments were not due and payable under the Workers' Compensation Act for the same reasons already stated in the above Finding of Fact, defendant-employer is not entitled to a credit for those benefits because like accrued compensation time, vacation and sick leave, these benefits were ones that plaintiff earned as a result of her years of employment and were paid because of her termination from defendant's employ as opposed to her being disabled by an injury entitling her to workers' compensation benefits and/or benefits under the employers' long-term disability plan.
20. Thereafter, plaintiff began receiving $1,863.00 a month in benefits under a non-contributory long-term disability plan that defendant-employer provided for its employees. These payments, which were not then due and payable under the Workers' Compensation Act because of the employer's denial of liability for the period of disability beginning 12 February 1993, thereby entitling the employer to a credit for those same benefits against the instant award of continuing disability benefits, but only up to the date of the instant award when the compensability of the involved claim for continuing disability since 12 February 1993 was established because any subsequent payments would be due and payable under the Workers' Compensation Act once compensability was established.
21. In view of not only the plaintiff's age and prior work experience, which has always involved the type of textile work she is no longer capable of, but the fact that more than two years have elapsed since she became totally disabled by the involved back injury and for each year that she has remained out of work, the Full Commission finds that the likelihood of her returning to work is diminished. Further, the Full Commission finds that there is a strong likelihood that the continuing disability benefits will be paid for some indeterminate time in the future before plaintiff returns to work, if she ever does.
22. As the result of her injury by accident on 24 April 1992, plaintiff has been incapable of earning wages in any job from 12 February 1993 and continuing.
23. Assuming plaintiff would return to work within a short time of this Award, she would be entitled to accept a more favorable remedy for her resulting 15 percent permanent partial disability of the back entitling her to an additional forty-five weeks of compensation, or $19,170.00, from which an attorney fee could likewise be awarded to plaintiff's counsel.
* * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. As a direct and natural result of the plaintiff's 24 April 1992 injury by accident and resulting surgery, plaintiff has remained totally disabled since 12 February 1993, thereby entitling her to compensation at a rate of $426.00 per week from 12 February 1993 and continuing, subject to a change of condition, medical or employment, as well as to a credit for the two weeks that defendant-employer continued plaintiff's full salary after 12 February 1993, and the $1,863.00 per month in benefits that the same employer paid under the noncontributory long-term disability plan provided for its employees. These payment were not then due and payable under the Workers' Compensation Act because of defendant-employer's denial of plaintiff's claim for disability after 12 February 1993. However, this credit only continues up until the time of the instant award when the compensability of plaintiff's claim for continuing disability was established and the benefits that she is hereafter entitled to would now be due and payable under the Workers' Compensation Act. N.C.G.S. § 97-2
(6); N.C.G.S. § 97-29; N.C.G.S. § 97-42; Foster v.Western Electric Company, 320 N.C. 113, 357 S.E.2d 670 (1987).
2. For the reasons stated in the above Finding of Fact, defendant-employer is not entitled to a credit for the six weeks severance pay it had paid plaintiff after her employment termination on 6 March 1993. Estes v. North Carolina StateUniversity, 102 N.C. App. 52, 401 S.E.2d 384 (1991).
3. For the reasons stated in the above Findings of Fact, there are sufficient funds available to pay plaintiff's counsel a reasonable attorney fee and thus the credit otherwise due defendant-employer for the long-term disability benefits paid should not be reduced. Church v. Baxter Travelnol Laboratories,Inc., 104 N.C. App. 411, 409 S.E.2d 715 (1991).
4. To the extent the same are reasonably designed to tend to affect a cure of, provide needed relief from and/or lessen the period of disability associated therewith, defendants are obligated to pay all reasonable necessary medical expenses incurred by plaintiff as a result of the 24 April 1992 back injury giving rise hereto, including as part thereof the corrective back surgery she underwent in July of 1993. N.C.G.S. § 97-25.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendants shall pay plaintiff, on account of her continuing total disability, compensation at a rate of $426.00 per week from 12 February 1993 to the scheduled hearing date and thereafter continuing at the same rate so long as she remains disabled, subject to a change of condition, medical or employment, as well as to a credit for the two weeks that her full salary was continued after 12 February 1993 and the $1,863.00 a month in benefits that she has received under the noncontributory long-term group disability plan provided by defendant-employer up until the time of this Award establishing compensability of plaintiff's claim, but not thereafter. Such compensation as has accrued herein, shall be paid in a lump sum, without commutation, subject to a reasonable attorney fee hereinafter approved.
2. At this time a reasonable attorney fee in the amount of $2,556.00 is hereby approved for plaintiff's counsel which shall be deducted from the accrued six weeks due under the above Award because of denial of defendant-employer's credit for the like period of severance pay plaintiff received. For the balance of his fee defendants shall forward every fourth compensation check payable herein directly to plaintiff's counsel.
3. To the extent the same are reasonably designed to effect a cure of, provide needed relief from and/or lessen the period of disability associated therewith, defendants shall pay all reasonable and necessary medical expenses incurred by plaintiff as a result of the April 24, 1992 back injury giving rise hereto, including as part thereof the corrective back surgery she underwent in July of 1993, when bills for the same are submitted in accordance with the Industrial Commission Rules.
4. Defendants shall bear the costs including as part thereof the expert witness fees previously awarded Drs. Rice and Lee to the extent the same have not already been paid.
 S/ ________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ ________________ DIANNE C. SELLERS COMMISSIONER
S/ ________________ COY M. VANCE COMMISSIONER