IRENE H. CHURCH, EMPLOYEE-PLAINTIFF v. BAXTER TRAVENOL LABORA-
TORIES, INC., EMPLOYER-DEFENDANT, AND AMERICAN MOTORISTS IN-
SURANCE COMPANY, CARRIER-DEFENDANT

No. 9010IC1268

(Filed 5 November 1991)

1. **Master and Servant § 55.3 (NCI3d) — workers' compensation — shoulder injury — new conditions of employment**

    The Industrial Commission correctly concluded that plaintiff suffered an injury by accident where plaintiff was injured while lifting bags of intravenous solution five working days after being transferred to that position after working about five years as an accounting clerk, which did not involve lifting. Plaintiff was not yet proficient in her new department and was not performing her usual work routine at the time of the injury.

    **Am Jur 2d, Workmen's Compensation §§ 227, 228.**

2. **Master and Servant § 68.4 (NCI3d) — workers' compensation — shoulder injury — thoracic outlet syndrome**

    The Industrial Commission did not err by striking the deputy commissioner's finding that plaintiff's incapacity to earn wages after 11 November 1988 was due to Thoracic Outlet

CHURCH v. BAXTER TRAVENOL LABORATORIES

[104 N.C. App. 411 (1991)]

Syndrome, a congenital disease, and that plaintiff did not suffer a compensable occupational disease, where the record viewed as a whole supports the Commission's conclusion that the parties did not try the TOS issue by consent.

**Am Jur 2d, Workmen's Compensation §§ 296-298.**

3. **Master and Servant § 69 (NCI3d)— workers' compensation — disability payments — 75% credit to employer**

The Industrial Commission did not err in a workers' compensation action by reducing a 100% credit to defendant-employer for disability payments to 75% and awarding the remaining 25% to plaintiff as attorney's fees based on the full workers' compensation award. Access to competent legal counsel is a virtual necessity in contested workers' compensation cases today and this award complies with the requirements of *Foster v. Western-Electric Co.*, 320 N.C. 113, and is authorized by N.C.G.S. § 97-42, since all credit given in these circumstances is subject to the approval of the Industrial Commission.

**Am Jur 2d, Workmen's Compensation §§ 644, 646.**

Judge PARKER dissenting.

APPEAL by defendants from Opinion and Award filed 26 July 1990 by Commissioner J. Randolph Ward. Heard in the Court of Appeals 27 August 1991.

*Cox, Gage and Sasser, by Robert H. Gage, for plaintiff-appellee.*

*Hedrick, Eatman, Gardner & Kincheloe, by Mel J. Garofalo, for defendant-appellants.*

EAGLES, Judge.

Defendants appeal from a worker's compensation award given by the full Industrial Commission (Commission) which modified an earlier deputy commissioner's award. The evidence presented to the Commission is summarized below.

I

Plaintiff worked roughly five years as an accounting clerk for the defendant-employer prior to the time of the painful incident giving rise to this appeal. The position of accounting clerk involved

CHURCH v. BAXTER TRAVENOL LABORATORIES

[104 N.C. App. 411 (1991)]

no lifting. Because of cutbacks, plaintiff was transferred to a production line job in defendant's filling department in early January 1988. Plaintiff's new duties included overwrapping and sealing bags of intravenous solutions, and then moving the bags to trays stacked in levels on a truck. Plaintiff's transfer to this position took place only five working days before her on-the-job injury. Plaintiff told her supervisor of the difficulties that she was having prior to her injury, however, the supervisor responded that she had no authority to modify plaintiff's job tasks.

The solution bags at the plant ranged in size from one-half to five liters. Plaintiff testified that the heavier bags were difficult to handle, since the liquid inside the "floppy" bags "jarred" her arms as she moved them. In each hand, plaintiff was expected to lift fluid bags totaling over ten pounds.

On 15 January 1988, plaintiff was trying to hoist filled bags to the top tray, above the level of her head. She experienced a sudden, unfamiliar pain, as though "someone had jerked" her right shoulder "out of socket." According to plaintiff's medical expert, "the best conclusion would be that [plaintiff] actually tore the rotator cuff at the moment she experienced that pain." Plaintiff had surgery twice and was out of work until 1 July 1988. In July, plaintiff returned to work and remained in the defendant's employ until 11 November 1988. This action was filed with the Commission on 1 November 1988.

On appeal to this Court, defendants assign error to the Commission's (i) finding and conclusion of law that plaintiff had suffered an "injury by accident" within the meaning of G.S. 97-2(6); (ii) determination that the issue of the compensability of plaintiff's TOS disability had not been tried by consent; (iii) decision to give defendants less than full credit for payments previously made to plaintiff under defendants' short term disability plan and then use this "withheld" money to pay plaintiff's attorney's fees. We will treat each of these contentions separately.

II

[1] Defendants first contend that plaintiff's injury was not compensable since for an injury to be characterized as one caused by "accident" and thereby compensable, the injury must involve more than the carrying on of the usual or routine duties of the employee. *Davis v. Raleigh Rental Center*, 58 N.C. App. 113, 116,

292 S.E.2d 763, 766 (1982). Defendants assert that plaintiff's injury was not the result of an accident since her injury occurred during her normal work routine. We disagree.

This Court has held that physical exertion may be "the precipitating cause" of an accidental injury required for compensability under G.S. 97-2(6). *See Hollar v. Montclair Furniture Co., Inc.*, 48 N.C. App. 489, 269 S.E.2d 667 (1980). The facts in the present case closely resemble the facts in *Gunter v. Dayco Corp.*, 317 N.C. 670, 346 S.E.2d 395 (1986). *Gunter* involved physical exertion not required in an injured employee's previous desk job. Our Supreme Court asserted that:

> New conditions of employment to which an employee is introduced and expected to perform regularly do not become a part of an employee's work routine until they have in fact become routine. . . . New conditions of employment cannot become an employee's "regular course of procedure" or "established sequence of operations" until the employee has gained proficiency performing in the new employment and become accustomed to the conditions it entails.

*Id.* at 675, 346 S.E.2d at 398. Under this reasoning, we find that plaintiff, who had been employed by defendant for five years in an office job before her work-related injury and who testified that she was not yet proficient in defendant's filling department, was not performing her usual work routine at the time of accidental injury on her fifth day on the production line. The Commission's conclusion that the plaintiff suffered an injury by accident is accordingly upheld.

### III

[2]    The defendants' next argument is that the Commission erred in striking the deputy commissioner's finding that plaintiff's incapacity to earn wages after 11 November 1988 was due to Thoracic Outlet Syndrome (TOS), a congenital disease, and his related conclusion that plaintiff did not suffer a compensable occupational disease as defined by G.S. 97-52 and G.S. 97-53(13). In our belief, the evidence presented adequately supports the Commission's actions on this matter.

Subsequent to her injury in January 1988, plaintiff did some "light duty" work for defendant-employer. Finally, on 1 July 1988, after two operations, and in response to her doctor's suggestions,

CHURCH v. BAXTER TRAVENOL LABORATORIES

[104 N.C. App. 411 (1991)]

plaintiff returned to her position on the production line. The plaintiff later discontinued her employment with the defendant on 11 November 1988 due to great pain in her shoulders.

In his deposition, Dr. Spencer (plaintiff's doctor) stated that in his opinion, plaintiff had torn her rotator cuff at the time of her January 1988 accident. According to Dr. Spencer, on 30 June 1988, plaintiff had "an excellent motion" and he urged her to return to work. Later, another doctor diagnosed plaintiff as having TOS. Plaintiff put on no other medical witnesses, nor did plaintiff present any detailed documentary evidence from the physician who diagnosed her TOS. The defendants themselves did not put on any evidence concerning TOS and the record discloses that in fact defendant's attorney twice objected to a line of questioning concerning TOS.

In her original filing dated 1 November 1988, plaintiff sought twenty weeks compensation *only* for temporary total disability following her previously discussed January injury. Plaintiff recovered from her January accident and returned to work in July, 1988. We recognize that plaintiff's evidence did probe the possible relationship between her initial injury and her battle with TOS after returning to work, however, the record viewed *as a whole* supports the Commission's conclusion that the parties did not try the TOS issue by consent.

IV

**[3]** Defendants' final contention is that the Commission had no authority to reduce the 100% credit for disability payments to 75%, and to award the remaining 25% to plaintiff as attorney's fees. The thrust of defendants' contention is that plaintiff's case is controlled by *Foster v. Western-Electric Co.*, 320 N.C. 113, 357 S.E.2d 670 (1987). *Foster* concerned a situation in which an injured employee was awarded $7,598.16 from her employer's private insurer. Later the Industrial Commission entered a worker's compensation award in the amount of $6,741.96 and denied the employer *any* credit for the prior payment of $7,598.16. In reversing the Commission's conclusion our Supreme Court stated:

> [P]olicy considerations dictate that an employer such as defendant in this case, who has paid an employee's wage-replacement benefits at the time of that employee's greatest need, should not be penalized by being denied full credit for the amount

paid as against the amount which was subsequently determined to be due the employee under workers' compensation.

*Id.* at 117, 357 S.E.2d at 673. We recognize *Foster*'s mandate, however, when *Foster* is read in view of G.S. 97-42 and policy considerations, the decision of the Commission must stand.

G.S. 97-42 dictates that any payments made by an employer to the injured employee during the period of her disability which were not due and payable when made, may, *subject to the approval* of the Industrial Commission, be deducted from the amount to be paid as workers' compensation. *Foster* recognized that the Commission must not make a complete denial of the credit to the employer; however, that is not the situation here. In the instant case, the Commission decided to award a credit to the defendant-employer, albeit not a full 100% credit.

The Commission's justification for not awarding the full credit was more than adequate. Baxter Travenol's private insurer paid the plaintiff only $2,797.44; the Commission later awarded $3,769.79 to plaintiff. The difference between these awards was less than $1,000 — a very small amount for any plaintiff to contest. In order to award attorney's fees of any significance, the Commission correctly calculated the fees on the basis of the total award instead of the $1,000 difference. As the Commission recognized, in contested workers' compensation cases today, access to competent legal counsel is a virtual necessity. If attorney's fees were allowed to be calculated from only the difference between the workers' compensation award and the private insurer's payment, then almost no attorney could afford to take a contested case where voluntary payments had already been made. Leaving injured employees without the representation they need to obtain the complete and total amount of their workers' compensation award would defeat the purposes of the Act. In fact, employers would be encouraged to contest liability and meanwhile make voluntary payments less than that required by the Workers' Compensation Act.

The Commission's award in its discretion of a 75% credit to defendant for payments made through its private insurer and the award of the remaining 25% to plaintiff to fund attorney's fees based upon the full workers' compensation award is well within the Commission's discretionary authority. The Commission's action compensated plaintiff's counsel for his essential legal services, and the award was within the Commission's authority to approve fee

payments pursuant to G.S. 97-90(c). The Commission's award allowed the defendant credit for payments that they had already made through their private insurer less only the plaintiff's reasonable attorney's fees calculated and based upon the amount of the entire worker's compensation award. This award complies with the requirements of *Foster* and is authorized by the statute since all credit given by the Commission in these circumstances is "subject to the approval" of the Industrial Commission. G.S. 97-42. The explicit language of G.S. 97-42 and the need to preserve the efficacy of the Workers' Compensation Act mandates our decision here affirming the award of the Industrial Commission.

Affirmed.

Judge JOHNSON concurs.

Judge PARKER dissents.

Judge PARKER dissenting.

I respectfully dissent from that portion of the majority opinion affirming the reduction in the credit and the increased attorney's fee. The majority purports to recognize the mandate in *Foster v. Western-Electric Co.*, 320 N.C. 113, 357 S.E.2d 670 (1987), but then superimposes a different interpretation upon the language of N.C.G.S. § 97-42. Nothing in the Court's application of N.C.G.S. § 97-42 in *Foster* suggests that the Commission has any discretion to reduce the amount of an employer's credit. To the contrary, the Court specifically stated:

> [P]olicy considerations dictate that an employer such as defendant . . . should not be penalized by being denied *full* credit for the amount paid as against the amount which was subsequently determined to be due the employee under workers' compensation.

*Id.* at 117, 357 S.E.2d at 673 (emphasis added). Read in light of this language in *Foster*, the words in N.C.G.S. § 97-42 "subject to the approval of the Industrial Commission" do not import discretion to allow or disallow a credit in whole or in part, but rather authorize review by the Commission to assure that (i) the payment by the employer qualifies as a matter of law for a credit and

(ii) the amount deducted as a credit has in fact been paid to the employee by the employer.

In the present case the effect of the Commission's action was to award plaintiff a duplicative payment of twenty-five percent of the benefits received under the employer's sickness and disability plan in order to provide a pool of funds from which to pay plaintiff's legal fee. Discussing the policy considerations in *Foster* the Court stated:

> Finally, the Act disfavors duplicative payments for the same disability. We recognize also that allowing double recovery reduces the incentive to adopt private disability plans providing for immediate payment of benefits.

320 N.C. at 117, 357 S.E.2d at 673 (citation omitted).

Moreover, by allowing this duplicative payment to provide plaintiff's legal fee, the Commission indirectly taxed defendant employer with an attorney's fee award and thereby exceeded *its* statutory authority. The Commission specifically declined to assess plaintiff's legal fee as part of the costs under N.C.G.S. § 97-88 stating, "[W]e do not find here the lack of merit in the defendants' position that traditionally motivates the Commission to make a fee award under that section." *See Bowman v. Chair Co.*, 271 N.C. 702, 159 S.E.2d 378 (1967) (Absent specific statutory authority, the Commission has no power to award attorney's fee.).

The countervailing policy arguments espoused by the Commission may be worthy of consideration; however, certain statements made by the Commission to support its decision are not supported by any evidence in the record. For example the Commission stated:

> [W]e would note that employers create these plans out of motives other than covering possible compensation liability. Indeed, the credit is available only in instances the employer has paid other benefits believing compensation is not due. In most cases, the plans pay greater benefits than the Act requires for some period of time. As a matter of practical fact, many if not most employers recover money for their sickness and accident plans from their compensation carrier when the credit is allowed, and thus benefit financially from the success of plaintiff's counsel, at least in the short run.

To the extent these comments are intended to be findings of fact, the record is devoid of any evidence upon which to find them.

BAXLEY v. NATIONWIDE MUTUAL INS. CO.

[104 N.C. App. 419 (1991)]

For the foregoing reasons, I vote to reverse the portion of the opinion and award reducing the credit. in order to augment the attorney's fee award.