The Form 21 Agreement, having been approved by the Commission, constitutes an Award of record and the same is incorporated herein by reference. In addition, the parties stipulated to the X-ray reports attached to the March 1, 1994 letter from Ms. Grimes to the undersigned and to those factual matters concerning long-term disability benefits set forth in her March 8, 1994 letter to the Deputy Commissioner.
* * * * * * * * * *
The undersigned have reviewed the Award based upon the record of the proceedings before the Deputy Commissioner.
The appealing party has shown good grounds to reconsider the evidence. However, upon reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner. Neither party here requested the Full Commission to receive further evidence or to rehear the parties or their representatives. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate order.
The Full Commission adopt as their own all findings of fact found by the Deputy Commissioner, as follows:
Based upon the competent and convincing evidence adduced at the hearing, the undersigned make the following additional
FINDINGS OF FACT
1. On and prior to November 19, 1991 plaintiff's job with defendant employer was as a picker and shipper which required her to pick orders in the warehouse, put them in a pushcart, package them, and put them on a conveyor belt. That job also required her to lift items weighing up to 70 pounds.
2. Plaintiff, who is 53 years old and has a ninth grade education, sustained the admittedly compensable injury by accident giving rise hereto on November 19, 1991 when she slipped on a wet floor and fell, landing on her tailbone and left hip-buttock area with her left leg straight out and her right foot slightly under the left leg in a figure four fashion.
3. As a result of the injury by accident giving rise hereto, plaintiff sustained right knee sprain, left ankle sprain, lumbar sprain, and pain in the left hip and coccyx for which she received conservative treatment from November 20, 1991 through December 20, 1991 by Drs. Bennett, Fernandez, and Fields.
4. Pursuant to a Form 21 Agreement which is dated December 6, 1991 and was approved by the Industrial Commission on January 7, 1992, defendants undertook to pay workers' compensation benefits to plaintiff at the rate of $234.68 per week for her period of temporary total disability from November 20, 1991 to December 5, 1991 by reason of the injury by accident on November 19, 1991 which resulted in right knee, left ankle, and tailbone injuries. On December 10, 1991, plaintiff signed a Form 28B Report Of Compensation And Medical Paid indicating that the report closed her case.
5. Plaintiff returned to work as a picker and shipper for defendant employer on December 5, 1991 and thereafter remained so employed on a full time basis to October 6, 1992 with the exception of a medical leave-of-absence from June 29, 1992 to July 4, 1992 and from September 8, 1992 to October 3, 1992 due to a venous stasis condition with bilateral leg pain and edema for which she was treated by Dr. Mazzocchi. Said venous stasis condition is not causally related to the injury by accident of November 19, 1991.
6. In about January 1992 while plaintiff was walking at home, her right knee gave out whereupon she fell. The manner in which she landed is undeterminable from the evidence of record. She did not notice any injuries as a result of this fall that required medical attention. The credible evidence fails to establish that the giving way of the knee and the fall are causally related to the injury by accident of November 19, 1991. Knees occasionally give out from injury or from knee problems and she had both an injury, knee sprain, as well as a knee problem, degenerative changes.
7. During the period that plaintiff worked from December 5, 1991 to October 6, 1992, she experienced continuing low back pain and right knee pain as well as aching and swelling with activity and on September 16, 1992, she began physical therapy at Carolina Physical Therapy on referral from Dr. Mazzocchi for treatment of her lumbar sprain. She reported to physical therapy on September 16 that her low back pain had become worse over the last three months. She thereafter continued on physical therapy for low back pain as well as right knee pain through November 13, 1992.
8. In August 1992 Dr. Carter examined and evaluated plaintiff for complaints of pain in the right foot and ankle and with a history of pain in the right leg and behind the right knee on occasions. Following examination, he prescribed arch support and exercises for treatment of chronic strain of a tendon in the right foot which was due to her walking flat-footed. Said right foot strain is not due to the injury by accident of November 19, 1991.
9. By October 6, 1992 when she again saw Dr. Carter, plaintiff's right foot had improved but her right knee continued to ache and swell with activity and she remained on physical therapy for low back pain. MRI of the right knee performed in October 1992 revealed degenerative changes without a definite tear. Dr. Carter thereafter rendered conservative care, including medications and knee immobilizer, for treatment of right knee sprain, a hyperextension injury with stretching of the posterior capsule and the posterior cruciate, which is due to the injury by accident of November 19, 1991, and Dr. Carter prescribed physical therapy for treatment of low back sprain which is also due to the injury by accident of November 19, 1991. By January 11, 1993, Dr. Carter reported that "we are in the process now of applying for long-term disability" due to her back and knee conditions.
10. When seen by Dr. Carter on April 30, 1993 plaintiff was complaining of pain in the groin and right hip. On examination, there was limitation of motion of the hip and x-rays of the hip on that date revealed aseptic necrosis and on June 24, 1993 he performed cord decompression of the right hip. When last seen by him on October 6, 1993, plaintiff complained of much increased pain and x-ray at that time revealed further collapse in the area of the decompression by reason of which Dr. Carter recommended hip replacement surgery. In December 1993, plaintiff was examined and evaluated by Dr. Spillmann.
11. The credible and convincing evidence of record fails to establish that the aseptic necrosis of plaintiff's right hip is causally related to the injury by accident of November 19, 1991.
12. By October 6, 1992, plaintiff experienced a change of condition for the worse with respect to her right knee sprain due to the injury by accident of November 19, 1991 and as a result thereof, she was rendered unable to earn any wages in any employment from October 6, 1992 to October 27, 1992. In addition, by October 27, 1992 she also experienced a change of condition for the worse with respect to her lumbar sprain due to the injury by accident of November 19, 1991 and as a result thereof in combination with her right knee sprain, her earning capacity was reduced from an average weekly wage of $352.00 which she earned at the time of the injury by accident to an average weekly wage of $169.01 which she was able to earn from October 27, 1992 to December 5, 1992, a period of five and four-seventh weeks during which she earned gross wages of $941.60. Beginning December 5, 1992 and continuing through November 30, 1993, the date of the hearing in this case, she was unable to earn any wages in any employment by reason of her right knee sprain and lumbar sprain which are causally related to the injury by accident of November 19, 1991.
* * * * * * * * * * *
Based upon the findings of fact as found by the Deputy Commissioner and adopted by the Full Commission, the Full Commission find as follows:
CONCLUSIONS OF LAW
1. The Form 21 Agreement and Award constitute a final award of the Commission within the purview of G.S. 97-47.
2. By October 6, 1992 plaintiff sustained a change of condition due to the injury by accident of November 19, 1991 which rendered her totally disabled from October 6, 1992 to October 27, 1992 for which she is entitled to compensation at the rate of $234.68 per week. G.S. 97-29. There is insufficient convincing evidence of record that plaintiff's aseptic necrosis of the right hip was causally related to her injury by accident of November 19, 1991. Thus this condition is not a compensable one.
3. As an additional result of a change of condition due to the injury by accident of November 19, 1991, plaintiff was partially disabled from October 27, 1992 to December 5, 1992 for which she is entitled to compensation at the rate of $122.00 weekly. G.S. 97-30.
4. As a further result of a change of condition due to the injury by accident of November 19, 1991, plaintiff was totally disabled beginning December 5, 1992 and continuing through November 30, 1993 for which she is entitled to compensation at the rate of $234.68 per week during said period and continuing thereafter for so long as she remains totally disabled due to the injury by accident giving rise hereto, subject to a credit which is hereinafter allowed for defendant employer. G.S. 97-29 and G.S. 97-42.
5. Plaintiff has assigned as error whether the Deputy Commissioner's allowance of credit for long-term disability should have taken into account the $100 credit which defendants have taken "sua sponte" by reducing the monthly long-term disability benefit amount plaintiff received.
The fact remains that the Industrial Commission can only address amounts actually paid, and not amounts plaintiff should have been paid under a disability plan, when it considers to what credit, if any, defendants are entitled. Plaintiff was paid $72.44 per week under the disability plan and the parties stipulated that plaintiff was actually paid $6,886.16 in S A benefits through March 4, 1994, and is continuing to receive $72.44 per week. The undersigned have no authority or jurisdiction to address the argument that plaintiff should have been paid $100 more per week under a private, non-workers' compensation related disability plan and thus defendants' credit should be calculated taking into account the amounts not paid. There was no failure on the Deputy's part in not addressing this. Accordingly, the Deputy Commissioner's determination as to credit was correct and is adopted by the undersigned as follows:
Defendant employer is hereby granted a 75 percent credit for long-term disability benefits which were wholly funded by defendant employer and which were paid to plaintiff in the aggregate amount of $6,886.16 during the period from December 5, 1992 through March 4, 1994 and which plaintiff will thereafter receive in the monthly amount of $72.44 until the obligation to pay said benefits ceases. The remaining 25 percent of said disability benefits paid and to be paid is hereby awarded to plaintiff's counsel as a partial award of attorney fees. G.S.97-42 and Church v. Baxter Travenol Laboratories, Inc., 104 N.C. App. 411
(1991).
6. Plaintiff's Motion for assessment of attorney fees against defendants pursuant to the provisions of G.S. 97-88.1 is hereby DENIED inasmuch as there was a reasonable basis, credibility with respect to causation and disability issues, to defend this case at hearing. Plaintiff argued on appeal that plaintiff should be entitled to an attorney's fee on the appeal to be paid by defendants. The undersigned, in their discretion, have determined that plaintiff's motion for attorney's fees should be DENIED.
7. Defendants have argued on appeal that rules of apportionment should be in effect with regard to this case. It is noted by the undersigned that defendants failed to raise this argument as error on their Form 44 and only brought attention to it in their brief. Pursuant to Rule 701(3), this ground for appeal is DEEMED TO BE ABANDONED, and arguments shall not be heard by the Full Commission. Defendants' request for a remand on the issue of apportionment is, therefore, accordingly DENIED.
* * * * * * * * * * *
Based upon these conclusions of law, the Full Commission have determined there exists no basis for amending the Award. Accordingly, the foregoing stipulations, findings of fact, and conclusions of law engender the following:
AWARD
1. Subject to counsel fees hereinafter allowed, defendants shall pay to plaintiff compensation at the rate of $122.00 weekly for the period from October 27, 1992 to December 5, 1992 and at the rate of $234.68 per week from October 6, 1992 to October 27, 1992 and from December 5, 1992 through November 30, 1993 and continuing thereafter so long as plaintiff remains totally disabled due to the injury by accident giving rise hereto, less a 75 percent credit to which defendant employer is entitled to by reason of long-term disability benefits paid in the amount of $6,886.16 during the period from December 5, 1992 through March 4, 1994 and in the amount of $72.44 monthly from March 5, 1994 until the obligation to pay those benefits ceases. The remaining 25 percent of the long-term disability benefits paid and to be paid shall be paid directly to plaintiff's counsel as a partial award of attorney fees.
2. A reasonable attorney fee in the amount of 25 percent of the compensation benefits payable herein is hereby approved for plaintiff's attorney. Said attorney fee shall be paid out of the accrued benefits and out of the benefits which will hereafter accrue by defendants making direct payment to plaintiff's counsel of every fourth week of compensation benefits payable under the terms of this Opinion and Award.
3. Defendants shall pay all medical expenses incurred and to be incurred by plaintiff for treatment of the injury by accident giving rise hereto and the change of condition therefrom when bills for the same shall have been submitted through defendant carrier to the Industrial Commission and approved by the Commission.
4. Defendants shall pay the costs, including an expert witness fee in the amount of $360.00 to Dr. Spillmann.
This the __________ day of ________________________, 1994.
 S/ _____________________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/ ____________________ J. RANDOLPH WARD COMMISSIONER
S/ ____________________ ROGER DILLARD, JR. COMMISSIONER
JHB/nwm 11/30/94