The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Lawrence B. Shuping, Jr. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Plaintiff is an unemployed, 25-year-old female with a tenth-grade education, who since developing the occupational skin disease giving rise hereto has obtained her certified nursing assistant certificate as a result of a twelve week course at Nash Community College. She has a history of vitiligo since age thirteen, which is a skin condition where there is a depigmentation of the skin and in plaintiff's particular case resulted in two depigmented areas, one on her back and another on her right hip. Although its exact cause is unknown; vitiligo is often associated with autoimmune diseases such as thyroid disease and diabetes and at the time of initially developing her vitiligo plaintiff had undergone thyroid surgery for a hyperactive thyroid. Whether initially related to her thyroid disease or not, plaintiff's vitiligo remained stable between the time she underwent thyroid surgery at age thirteen and her developing the disabling skin condition giving rise hereto more than thirteen years later after she had begun working for defendant-employer.
2. In approximately June of 1992 plaintiff became employed by defendant Consolidated Diesel Company as a line technician responsible for working on an assembly line assembling diesel engines manufactured on the premises. She was initially assigned to the oil drain station draining oil out of engines; but at the time of developing the skin problems giving rise hereto in March of 1994 had been working at the prep station for some six or seven months preparing parts for engines, some of which she had to apply lubricant to and others were covered with oil resulting in her wearing protective rubber gloves on the prep line.
3. While working on the assembly line plaintiff was exposed to a number of airborne chemicals that were used in defendant-employer's manufacturing process, including, but not limited to, various oils and lubricants, resulting in there being a noticeable chemical odor in the work environment and one that permeated her clothing.
4. The involved claim is for irritant contact dermatitis due to plaintiff's exposure to various oils, lubricants and other chemicals in the course of her employment as an assembly line technician at defendant-employer's diesel engine manufacturing plant, which aggravated her existing, but previously stable, vitiligo thereby proximately contributing to her ultimate disability resulting in the disabling skin disease for which compensation is claimed manifested by itching and an extension of her vitiligo and is thus due to causes which are characteristic of and peculiar to the same trade, occupation or employment, wherein, as compared to members of the general public and other employments at large, there is an increased risk of the same condition because these types of chemicals, oils and lubricants are only found in certain manufacturing operations and are not ones to which members of the general public would be exposed on a daily basis.
Contact dermatitis includes a spectrum of skin diseases that occur from exogenous (outside) agents coming in contact with the skin, either direct contact or airborne. The most common occupational skin disease is contact dermatitis.
5. Due to her exposure to various oils, lubricants and other chemicals in the course of her employment as an assembly line technician plaintiff developed irritant contact dermatitis in March of 1994, which aggravated her existing, but previously stable, vitiligo thereby proximately contributing to her ultimate disability resulting in the disabling skin condition giving rise hereto manifested by extension of her vitiligo lesions and itching as well as secondary depression.
6. On May 17, 1994 plaintiff initially sought medical treatment for the same condition from Dr. Dennis Polly, a Wilson dermatologist, who prescribed medication and subsequently performed a biopsy confirming her vitiligo. Two days later plaintiff was seen by her family physician, Dr. Martin Hood, because of the disabling depression she had developed because of the worsening of her vitiligo and he not only prescribed an anti-depressant, but gave her a three month leave of absence from work.
7. During the three month leave of absence Dr. Hood provided and while she was subsequently out of work on maternity leave for the birth of her second child in September of that year, plaintiff's skin condition improved; however, when she attempted to return to her regular assembly line job on or about December 5, 1994 plaintiff experienced a recurrence of her symptoms of itching and further extension of her vitiligo lesions.
8. In the interim on November 29, 1994 she had come under the care of Dr. Charles M. Phillips, a Greenvile dermatologist, who began PUVA therapy to re-pigment her vitiligo lesions and ultimately on January 19, 1995 removed her from further exposure to the chemicals that were causing her disabling skin condition working as an assembly line technician.
9. Although no longer then capable of her regular line technician's job working on the premises assembly line; plaintiff was capable of engaging in work that did not similarly expose her to chemicals, oils and lubricants and defendant-employer was initially able to provide her with suitable work in an office environment in the so-called team room where she was responsible for putting caps on parts. Plaintiff's condition improved when she began working in the team room. Despite the improvement in plaintiff's condition working in an office environment in the team room, the recommendation of her treating physician, Dr. Phillips, that she continue working in the team room as the environment there was not the same as an assembly line because of factors such as sweat, friction and particulate matter that might not be measurable; defendant-employer refused to allow plaintiff to continue working in the suitable environment that it had been providing her in the team room or other suitable alternate work because of her inability to return to her regular assembly line worker's job; but rather, "out placed" her.
10. During the initial three-month period after she was "out placed" on April 12, 1995, defendant-employer continued plaintiff's full salary entitling it to a credit against the instant Award of temporary total disability benefits pursuant to the provisions of G.S. 97-42 because those payments were not due and payable under the Workers' Compensation Act by virtue of the same employer's denial of the involved claim. Thereafter plaintiff received 80 percent of her full salary for three months and since has applied for and been granted long term disability by defendant-employer. Assuming that both benefits are paid by defendant-employer either directly or through some type of non-contributory plan provided for its employees, they were not due and payable under the Workers' Compensation Act because of the same employer's denial of the involved claim likewise entitling defendant-employer to a credit pursuant to the provisions of97-42.
11. Because the instant Award of compensation benefits would not be sufficient to provide a reasonable attorney fee for plaintiff's counsel if defendant-employer were allowed to take a 100 percent credit for the benefits it has paid plaintiff since "out placing" her in April of 1995, any credit due for those benefits should be reduced by 25 percent to allow for an Award of a reasonable attorney fee for plaintiff's counsel.
* * * * * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Due to her exposure to various oils, lubricants and other chemicals in the course of her employment as an assembly line technician for defendant-employer plaintiff developed disabling irritant contact dermatitis, which aggravated her existing, but previously stable, skin disease (vitiligo) thereby proximately contributing to her ultimate disability resulting in the disabling skin disease for which compensation is claimed, which is thus due to causes and conditions that are characteristic of and peculiar to her particular trade, occupation or employment, but excluding all ordinary diseases of life to which the public is equally exposed outside of that employment. Thus, plaintiff has contracted a compensable occupational disease pursuant to the provisions of G.S. 97-53(13).
2. As a result of the occupational disease giving rise hereto plaintiff has remained totally disabled since April 12, 1995 when defendant-employer refused to continue to provide her with the type of suitable alternate work required because of her inability to return to her regular line technician's job and instead "out placed" plaintiff entitling her to compensation at a rate of $226.96 per week from April 12, 1995 to the scheduled hearing date and thereafter continuing at the same rate so long as she remains totally disabled, subject to a change of condition, medical or employment, and to a credit for the three months of full salary, three months of 80 percent salary and long-term disability benefits that plaintiff has received since April 12, 1995, which were either provided directly by defendant-employer or pursuant to a non-contributory plan provided for its employees, which were not due and payable under the Workers' Compensation Act by virtue of the same employer's denial of the involved claim; however, the same credit should be reduced by 25 percent to allow plaintiff's counsel to receive a reasonable attorney fee pursuant to the authority of the Church v. Baxter Travenol Laboratory case,104 N.C. App. 411, 409 S.E.2d 715 (1991). G.S. 97-42. G.S.97-29.
3. To the extent the same are reasonably designed to tend to effect a cure of, provide needed relief from and/or lessen the period of disability associated therewith defendants are obligated to pay all reasonable and necessary medical expenses incurred by plaintiff as a result of the occupational skin disease giving rise hereto.
* * * * * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendants shall pay plaintiff, on account of her disability, compensation at a rate of $226.96 per week from April 12, 1995 to the scheduled hearing date and thereafter continuing at the same rate so long as she remains totally disabled, subject to a change of condition, medical or employment, as well as a credit for the full salary, 80 percent salary and long-term disability benefits that defendant-employer has paid since April 12, 1995; however, the credit should be reduced by 25 percent to provide a reasonable fee for plaintiff's counsel.
2. A reasonable attorney fee for plaintiff's counsel is hereby approved by reducing the credit that defendant-employer is otherwise due for the full salary, 80 percent salary and long-term disability benefits it has paid since April 12, 1995 by 25 percent and the resulting difference paid directly to plaintiff's counsel, which from the accrued benefits due under the involved Award will be accomplished by reducing the accrued amounts of defendant-employer's credit by 25 percent and forwarding the same directly to plaintiff's counsel. For the balance of her fee from the non-accrued continuing disability benefits any continuing credits due would be reduced by 25 percent and forwarded directly to plaintiff's counsel.
3. To the extent the same are reasonably designed to tend to effect a cure of, provide needed relief from and/or lessen the period of disability associated therewith, defendants shall pay all reasonable and necessary medical expenses incurred by plaintiff as a result of the occupational skin disease giving rise hereto when bills for the same are submitted in accordance with the Industrial Commission rules.
4. Defendants shall bear the cost, including as part thereof the expert witness fees previously awarded for deposition testimony of the physicians involved.
FOR THE FULL COMMISSION
 S/ ___________________________ COY M. VANCE COMMISSIONER
CONCURRING:
S/ ___________________________ THOMAS J. BOLCH COMMISSIONER
S/ ___________________________ DIANNE C. SELLERS COMMISSIONER
CMV/cnp/mj 10/31/96