***********
This case was heard before Deputy Commissioner Edward Garner, Jr. in Concord, North Carolina, on January 22, 2001. At the hearing, defense counsel admitted that plaintiff suffered a compensable injury by accident to his back. The medical evidence further established that Dr. James E. Rice, MD, had treated plaintiff and indicated by report dated December 27, 2000, that a delay in plaintiff's having epidural injections could result in significant complications. Therefore, by order dated March 21, 2001, Deputy Commissioner Garner approved the treatment recommended by Dr. Rice.
 ***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Garner, supplemented by the deposition and accompanying exhibits of Dr. James E. Rice taken on January 9, 2002, and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award. However, based on the January 9, 2002 deposition and exhibits and upon review of the facts certain modifications to the Deputy Commissioner's Opinion and Award are necessary. Accordingly, the Full Commission modifies and affirms the Opinion and Award of Deputy Commissioner Garner.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner and in a Pre-Trial Agreement submitted prior to the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between the plaintiff and the named employer.
3. Plaintiff's average weekly wage is as set forth on the Form 22 (wage chart).
4. Liberty Mutual Insurance Company is the carrier on the risk.
5. Plaintiff is seeking medical treatment and temporary total disability benefits for his compensable injury by accident.
 ***********
Based upon all of the competent evidence of record and the reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACTS
1. On July 10, 2000, plaintiff sustained an injury by accident to his back arising out of and in the course of his employment for which the employer admitted liability at the hearing before the Deputy Commissioner.
2. David Earl Baldwin had been a long-term employee at Citation Foundry Services, Inc. He earned his living swinging a twelve pound sledge hammer, knocking off thirty to thirty-five pound chunks of metal called "gates" or "risings" from castings which moved down an assembly line, picked up the extremely hot, heavy, freshly cast gates with two pairs of gloves and threw them into a metal hopper. He did this work continuously day in and day out. Since 1985 he had quit or been fired on many, many occasions and was always re-hired because of his excellent work record and his ability to perform this extremely heavy manual labor.
3. On July 10, 2000, a thirty-five pound iron casting caught plaintiff's glove and snatched him as he was turning, causing immediate pain to his back and causing him to fall against a hopper. This history is consistent on the medical record noted by Montgomery County Family Care Center (the company doctor) on July 10, 2000, where plaintiff was sent by the employer. Plaintiff was given sedentary restrictions. Later that night Plaintiff went to the Richmond Memorial Hospital emergency room and was taken out of work until July 17, 2000
4. By July 25, 2000, Montgomery County Family Care Center had further restricted plaintiff's sedentary work to no bending, squatting, kneeling, walking, standing, climbing or overhead work. The clinic note of that date notes "Patient's workmen's comp told him to come here today. July 10th pt. caught glove on material he was throwing at work and pulled his back out. Pt. has not worked since that date and has been resting but pain has not gone away. He presents today for evaluation and treatment." Because he was in great pain and reduced to sedentary activity he sought an opinion from Dr. Douglas M. Burch.
5. Dr. Burch first saw plaintiff on July 28, 2000, and an x-ray revealed spondylolysis. The company doctors had prescribed physical therapy without first obtaining proper x-rays, which Dr. Burch felt was so serious that he immediately referred plaintiff to Dr. James E. Rice. On July 31, 2000, Dr. Burch noted "It is my opinion that Mr. Baldwin's severe spinal condition is unstable in nature with probable HNP with spondylo. Advised patient of no work activities until further assessed." Dr. Burch also spoke with Robin Marsh, the physical therapist in Mt. Gilead, and advised her that the simple diagnosis of low back pain was incorrect and advised her of true diagnosis and advised her of this consult. Dr. Rice's follow-up evaluation of September 20, 2000 verifies Dr. Burch's assessment of spondylolysis.
6. Dr. Rice recommended epidural injections and absolutely no work until the injury was treated. Dr. Rice's medical records reflect:
 I really think with his continued symptoms and lack of response to oral steroids an epidural steroid injection is a very good way to try and get him better without having to resort to surgical intervention. I would strongly encourage his carrier to authorize this so we can try and get him back to work activities. Follow up in 4 weeks. No work in the interim.
 As before I think further procrastination over the epidural steroid injection only prolongs his chance of getting back quickly to a more functional level. There is also a very good chance that if he does not get better he is looking at having to go for an extensive spinal fusion to correct his problem. Hopefully he will be able to get the epidural steroid injection done expeditiously and get back to a more functional status.
7. Dr. Rice kept plaintiff out of work the entire period of time beginning with plaintiff's first visit September 20, 2000.
8. Deputy Commissioner Ed Garner in open court stated "Here's what I'm inclined to rule — specific traumatic incident on July 10, return to light duty, he was discharged — company procedure . . ." It was apparent to Deputy Commissioner Garner as it is apparent from the records that plaintiff had been engaged in heavy physical labor, was in excellent physical condition, hurt himself on the job and was in significant pain secondary to the accident according to the medical records.
Now if you want to — if you want to question the doctor in the meantime, I'll certainly allow that, but do it pretty quickly, if you want to depose him and ask any questions regarding causal connection. If I see a healthy person lifting a jackhammer, then has an incident and has problems, and the doctor is saying he needs some treatment, it's sort of obvious that it's related. Unless you get a blazing gun or something to show that it's not related, it looks like it is.
9. Deputy Commissioner Garner thus advised defense counsel that should defense counsel desire to challenge Dr. Rice's opinion, he needed to go ahead and schedule the deposition of Dr. Rice. Defendant did not schedule the deposition testimony of Dr. Rice. The medical records of Montgomery County Family Care Center, Richmond Memorial Hospital emergency room, Dr. Burch and Dr. Rice all support a finding that plaintiff was disabled from all but sedentary duty employment on July 10, 2000 and from any employment beginning July 31, 2000, and the Full Commission so finds. Since Foundry Service Company had no sedentary duty employment available and thus offered none to plaintiff, plaintiff has been unable to earn wages by reason of his compensable injury since July 10, 2000.
10. The evidence is overwhelming and uncontradicted that plaintiff sustained an injury by accident July 10, 2000, accompanied by immediate medical treatment and ongoing continued pain and difficulty. Fusion surgery ultimately was performed on or about July 3, 2001. Dr. Rice testified, and the Full Commission finds as a fact, that recovery following surgery could take as long as 12 months from the surgery, or until sometime in July of 2002.
11. Plaintiff's accident materially accelerated and aggravated his pre-existing non-disabling spondylolysis and proximately contributed to his disability.
12. Defendants' argument that the July 10, 2000 injury by accident and specific traumatic incident amounted only to a temporary aggravation of a pre-existing condition is specious. The medical records show a progression of pain and disability. For example, defendants' own doctors at Montgomery County Family Care Center increased the restrictions from sedentary with some activity to sedentary duty with no lifting, standing, bending, squatting, and so forth. Dr. Burch took plaintiff out of work completely July 31, 2000, an act supported by Dr. Rice on September 20, 2000 and thereafter.
13. Defendants' argument that plaintiff was legitimately fired for absenteeism is not credible and their defense of constructive refusal to work fails because of proof to the contrary.
14. Defendants' argument that plaintiff was not disabled because he reapplied for the job as a gatebreaker on July 18, 2000, is likewise without merit. Plaintiff was fired on July 12, 2000, purportedly based upon incidents which had occurred on July 6 and July 7 but which were not written up until after the accident. He was advised that he had to reapply for employment.' He filled out the application and entered "gatebreaker" because that had been his job. He had assumed he would be put on light duty, painting or sweeping. The notation of "gatebreaker" was simply the job that he had always performed. Swinging a twelve-pound sledgehammer was not a light duty job. In any event, by July 25, 2000, defendants' own doctor indicated that plaintiff was relegated to sedentary employment and this does not exist within a foundry setting.
15. The fact that the foundry experienced an economic downturn and was laying off employees around the time immediately following plaintiff's injury by accident was serendipitous and was not the reason plaintiff could not work. He could not work because of his compensable injuries. Additionally, Gary Reynolds, foundry manager, admitted that on July 12, 2000 and as of the date of the hearing, there was no light duty work for plaintiff at the foundry.
16. Plaintiff's average weekly wage as set forth on the Form 22 (wage chart) is $403.55, which yields a compensation rate of $269.03 per week.
17. Plaintiff received some short-term disability payments and/or unemployment benefits during the time he was temporary totally disabled. Defendants are entitled to appropriate credit for those benefits paid during this period.
18. Dr. Rice rendered the opinion, and the Full Commission finds as fact, that the incident with the sledge hammer on July 10, 2000 strained plaintiff's back and aggravated his underlying spondylolysis condition, rendering him incapable of working. The lumbar MRI scan ordered by Dr. Rice demonstrated spondylolysis at L4-L5. There were changes in the disc of a bulging annulus versus what was described as a herniation as well as a degree of narrowing of the foramen or opening where the nerves exit at that level bilaterally. What that means in layman terms is that there are changes at that next-to-the-bottom disc space where the vertebral bodies slip forward, and because of the relative slip, in conjunction with bulging of the disc and changes where the bony defect or spondylolysis is, that there is not enough room for the nerves, that they tend to get impinged upon or pinched and that the change creates a significant amount of back and leg symptoms in most individuals.
19. The Full Commission finds that, to a reasonable degree of medical certainty, the spondylolysis that Mr. Baldwin had was most likely pre-existing and not caused by the accident, but that changes in this and his current symptomlogy were as a result of aggravating that condition and causing his clinical symptoms.
20. Because of his compensable injuries, plaintiff has been unable to earn wages since July 10, 2000. This condition is likely to continue until sometime in July 2002. Plaintiff has not reached maximum medical improvement.
21. Defense of this matter at the hearing before the Deputy Commissioner and on appeal before the Full Commission was without reasonable ground. A reasonable fee to plaintiff's attorney for the hearing before the Deputy Commissioner is 25% of the temporary total compensation ordered paid without offset for credits allowed.
22. The appeal to the Full Commission in this case was brought by the insurer and the Full Commission by this decision orders the insurer to make, or to continue payments of benefits, including compensation for medical expenses, to the injured employee. A reasonable fee to plaintiff's attorney for handling the appeal before the Full Commission is $2,000.00.
 ***********
Based upon the foregoing Findings of Facts, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On July 10, 2000, plaintiff suffered an injury by accident arising out of and in the course of the employment for which there are compensable consequences. N.C. Gen. Stat. § 97-2(6).
2. As a result of plaintiff's back injury on July 10, 2000, he has been temporarily and totally disabled from July 10, 2000 to the filing of this Opinion and Award and is entitled to benefits at the compensation rate of $269.03 per week until he is no longer disabled and returns to gainful employment. N.C. Gen. Stat. § 97-29.
3. Since plaintiff suffered a compensable injury by accident, defendants shall pay all medical expenses incurred by plaintiff resulting from said injury, including the treatment recommended by Dr. Rice. N.C. Gen. Stat. § 97-25.
4. Defendants are entitled to appropriate credit for any wages, disability or unemployment compensation received by plaintiff after July 10, 2000 and until defendants are no longer responsible for payment workers' compensation benefits. N.C. Gen. Stat. §§ 97-41, 97 42.1.
5. For defending the case without reasonable grounds at the hearing before the Deputy Commissioner the Full Commission may assess the whole cost of the proceedings including reasonable fees for plaintiff's attorney upon the party who has defended them. N.C. Gen. Stat. §97-88.1. The Full Commission in its discretion may base a reasonable fee for plaintiff's attorney on compensation due to an employee without offset for credits otherwise allowed. Church v. Baxter Travenol Labs.,Inc., 104 N.C. App. 411, 409 S.E.2d 715 (1991).
6. Since the appeal to the Full Commission in this case was brought by the insurer and the Full Commission by this decision orders the insurer to make, or to continue payments of benefits, including compensation for medical expenses, to the injured employee, the Full Commission may further order that the cost to the injured employee of such hearing or proceedings including therein reasonable attorney's fee to be determined by the Commission shall be paid by the insurer. N.C. Gen. Stat. §97-88.
 ***********
Based upon the foregoing Findings of Facts and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay temporary total disability benefits to plaintiff at the compensation rate of $269.03 per week from July 10, 2000 to the date of filing of this Opinion and Award and continuing until plaintiff is able to return to gainful employment or until further order of the Industrial Commission. That compensation which has accrued shall be paid to plaintiff in a lump sum subject to any appropriate credit hereinafter approved. No attorney fees shall be deducted inasmuch as defendants must pay those fees as part of the costs.
2. Defendants shall pay all medical expenses incurred by plaintiff resulting from this back injury, including but not limited to, the treatments recommended by Dr. Rice. This treatment is likely to be needed at least through July 2002 and perhaps beyond.
3. An attorney's fee in the amount of twenty-five percent of the award due plaintiff, measured without offset for any credit, is hereby approved for plaintiff's counsel pursuant to N.C. Gen. Stat. § 97-88.1 in connection with the hearing before the Deputy Commissioner. Defendants are ordered to pay a separate amount equal to twenty-five percent of the compensation that has accrued, without offset for any credit, directly to plaintiff's counsel. In addition, defendants are ordered to send directly to plaintiff's counsel weekly a check equal to 25% of the weekly amount paid to plaintiff. Plaintiff's weekly compensation shall not be reduced by any amount.
4. Defendants shall pay forthwith to plaintiff's counsel $2,000.00 as an appropriate fee under N.C. Gen. Stat. § 97-88.
5. Defendants shall pay to plaintiff interest on the compensation due plaintiff at the rate of 8% per year from the date for the hearing before the Deputy Commissioner until paid.
6. Defendants are entitled to appropriate credit for any short-term and unemployment benefits paid to plaintiff while he was disabled. Counsel shall confer and compute the credit due and offset said amount.
7. All other issues, if any, in this case shall be deferred pending maximum medical improvement.
8. Defendants shall pay the costs due the Commission.
This 13th day of February 2002.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER