* * * * * * * * * * *
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission affirms the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties through the Pre-trial Agreement and at the hearing as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers' Compensation Act. *Page 2 
2. An employment relationship existed between Plaintiff and Defendant-Employer on December 5, 2003, and on March 14, 2006.
3. On December 5, 2003, Plaintiff suffered a compensable injury by accident involving his right shoulder and neck.
4. The average weekly wage for Plaintiff's compensable December 5, 2003, injury by accident is $1,015.00, which is sufficient to yield the maximum compensation rate for 2003 of $674.00 per week.
5. The average weekly wage for Plaintiff's March 14, 2006, low back claim is sufficient to yield the maximum compensation rate for 2006 of $730.00 per week.
 * * * * * * * * * * *
As set forth in the Pre-Trial Agreement and in this Opinion and Award, the Full Commission addresses the following:
 ISSUES
1. Did Plaintiff sustain a compensable injury to his lower back on March 14, 2006? If so, did this injury result in any disability?
2. Has Plaintiff been totally disabled since March 29, 2006, due to either his compensable December 5, 2003, injury by accident or the March 14, 2006, alleged injury by accident?
3. Did Plaintiff have one or more unsuccessful trial return to work periods involving one or both of the injuries sustained in his compensable December 5, 2003, injury by accident after returning to light duty work on May 16, 2005? If so, what are the periods of time for which Plaintiff is due temporary total disability benefits? *Page 3 
4. Are Defendants entitled to a credit for Sickness Accident benefits paid to Plaintiff? If so, in what amount?
 * * * * * * * * * * * EVIDENCE
1. The following exhibits were stipulated into evidence by the parties, without need for further authentication or verification:
 a. Stipulated Exhibit Number 1: Forms filed with the Industrial Commission for I.C. File Number 397080
 b. Stipulated Exhibit Number 2: Forms filed with the Industrial Commission for I.C. File Number 611890
 c. Stipulated Exhibit Number 3: Incident Report for I.C. File Number 611890
 d. Stipulated Exhibit Number 4: Medical Records
 e. Stipulated Exhibit Number 5: Additional Plant Medical Records
 f. Stipulated Exhibit Number 6: Positions Held at Goodyear
 g. Stipulated Exhibit Number 7: Attendance Records
 h. Stipulated Exhibit Number 8: TTD Payments
 i. Stipulated Exhibit Number 9: Payroll Records
2. The following depositions were taken following the hearing before the Deputy Commissioner, and the transcripts received into evidence:
 a. Dr. Inad B. Atassi (Sept. 13, 2006)
 b. Darrell Reddy (Sept. 19, 2006)
 c. Don Rainey (Oct. 2, 2006) *Page 4 
 d. Dr. Sampath V. Charya (Oct. 27, 2006)
 * * * * * * * * * * * Based upon the competent evidence of record and the reasonable inferences arising therefrom, the Full Commission makes the following: FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, Plaintiff was 47 years old and had been employed by Defendant-Employer for 28 years. He began working for Defendant-Employer right after graduating from high school. Although Plaintiff was not working at the time of the hearing before the Deputy Commissioner, Plaintiff remained employed by Defendant-Employer and would become eligible for retirement from Defendant-Employer in July 2008.
2. On December 5, 2003, Plaintiff sustained an admittedly compensable injury by accident involving his neck and right shoulder while working as a Tire Builder. Plaintiff was initially out of work from December 6, 2003, through December 8, 2003. He then returned to light duty work on December 9, 2003. Plaintiff's light duty work consisted of tasks such as "scraping dots off the floor," venting tires, and pulling edges. He remained on light duty until approximately March 11, 2004, at which time he was sent home because there was no longer any light duty work available within his restrictions.
3. Plaintiff received temporary total disability benefits for his compensable injury by accident beginning on March 11, 2004. He underwent surgery on his right shoulder by Dr. Robert Wyker on July 19, 2004. On February 23, 2005, Dr. Sampath Charya evaluated Plaintiff's neck and gave him a 15-pound weight restriction. On March 23, 2005, Dr. Wyker opined that Plaintiff probably would have difficulty doing activities at shoulder level or above, *Page 5 
and indicated that his pre-injury job as a Tire Builder was no longer suitable to his physical capacities. On April 11, 2005, Dr. Charya re-evaluated Plaintiff's neck and said that he could lift only up to 20 pounds.
4. On May 16, 2005, Plaintiff was referred to the Human Resources department by the plant dispensary for a permanent job change since he could no longer work as a Tire Builder in light of his restrictions. Initially, Plaintiff was placed in the Banbury, but he could not physically do that work. He was then placed in the Tire Room in a Trucking job, but that work aggravated his neck so he eventually had to stop doing it.
5. Thereafter, Plaintiff was given various tasks to do, none of which were regular jobs that non-injured people perform. For example, the plant had him scrapping out rolls, winding rolls, and scrapping out tires.
6. Plaintiff continued to experience neck pain while doing the various light duty tasks assigned to him. However, despite his continuing neck pain, Plaintiff continued to try to perform the various light duty tasks given to him. Plaintiff reported his ongoing neck pain to the plant dispensary on numerous occasions, including June 9, 2005, August 8, 2005, and January 10, 2006.
7. Although Defendant-Employer continued to attempt to accommodate Plaintiff's restrictions by repeatedly moving him to different positions, and although Plaintiff continued to perform light duty work and worked for over 10 months, the Full Commission finds based on the greater weight of the evidence of record that Plaintiff's return to work as of May 16, 2005, was unsuccessful.
8. On March 14, 2006, Plaintiff was pushing a steel carcass truck at work, which was approximately 6 feet wide and 12-14 feet long and which weighed between 300 and 400 *Page 6 
pounds. While Plaintiff was leaning forward pushing the carcass truck, the truck hit a guardrail. After the truck hit the guardrail, Plaintiff went to stand up, and when he did so he felt his back go out and he could hardly walk.
9. Plaintiff reported and documented this incident on the very day it happened. He also sought treatment at the plant dispensary. Two days later, Plaintiff returned to the plant dispensary because his low back pain had started to radiate down his legs, at which time Plaintiff was given additional work restrictions. On March 29, 2006, Plaintiff was told by Defendant-Employer that Defendant-Employer had no work available for Plaintiff within his restrictions. Plaintiff has not worked since that date.
10. Based on the greater weight of the evidence, the Full Commission finds credible Plaintiff's testimony concerning his March 14, 2006, low back injury. The Full Commission further finds that Plaintiff's March 14, 2006, low back injury arose out of and in the course of his employment and was the direct result of a specific traumatic incident of the work assigned.
11. On May 3, 2006, Dr. Charya evaluated Plaintiff's low back pain. In his May 3, 2006, office note, Dr. Charya documented that the incident at work in March of 2006 had aggravated a degenerative condition in Plaintiff's low back. During his deposition testimony, Dr. Charya reiterated his prior opinion. Presented with a hypothetical situation consistent with the facts as found herein by the Full Commission, Dr. Charya explained how such a specific traumatic incident could result in an aggravation of a pre-existing degenerative condition in an individual's back. Considering the specific condition of Plaintiff's spine, Dr. Charya testified that "that aggravation is highly likely" in the present case, and thus that the March 14, 2006, incident at work aggravated Plaintiff's pre-existing degenerative disc disease to the point where it became disabling. *Page 7 
12. Dr. Charya has opined, and the Full Commission finds as fact based on the greater weight of the evidence of record, that when Plaintiff leaned forward and pushed the heavy steel carcass truck into the guardrail on March 14, 2006, Plaintiff aggravated a pre-existing low back condition to the point that he required medical treatment.
13. Although Dr. Atassi has opined that Plaintiff's low back injury has resolved, Dr. Atassi's opinion is given less weight than Dr. Charya's opinion. Dr. Charya has stated that Plaintiff's current lifting restrictions, as well as the restrictions on Plaintiff's spinal movements, pertain to both his pre-March 14, 2006 neck condition as well as his post-March 14, 2006, low back condition. The Full Commission therefore finds, based on the greater weight of the evidence, that Plaintiff's low back injury had not resolved as of the date of the hearing before the Deputy Commissioner. As supported by Dr. Charya's testimony, Plaintiff may need additional medical treatment for his low back injury in the future.
14. As of the date of the hearing before the Deputy Commissioner, Plaintiff had continued to experience neck and right shoulder pain, as well as low back pain, and had also begun to experience psychological stress due to his pain. Dr. Charya testified, and the Full Commission finds as fact, that Plaintiff is experiencing anxiety and depression due to the pain arising from his compensable injury, and Dr. Charya has prescribed Zoloft for Plaintiff's anxiety and depression.
15. As of the date of the hearing before the Deputy Commissioner, Plaintiff had not returned to work due to his work restrictions since he was sent home on March 29, 2006. Defendant-Employer has been unable to accommodate Plaintiff's work restrictions. Considering that Plaintiff had worked only for the Defendant-Employer since graduating from high school, for approximately 28 years; that Plaintiff still has significant lifting restrictions; and that Plaintiff *Page 8 
was working light duty with those restrictions when he was told that Defendant-Employer could no longer accommodate him, the Full Commission finds based on the greater weight of the evidence of record that it would have been futile for Plaintiff to look for work with another employer, and therefore that Plaintiff has been unable to earn wages in the same or any other employment.
16. At Plaintiff's October 26, 2006, examination, Dr. Charya continued Plaintiff's restrictions, which per Dr. Charya's testimony, were for both Plaintiff's neck and back. Dr. Charya indicated that the restrictions would have been the same, even without complaints of low back pain. However, because those restrictions are based on Plaintiff's new injury to the lower back as well as on Plaintiff's earlier neck injury, the Full Commission finds that Plaintiff is entitled to receive benefits for disability based upon both injuries and, thus, is entitled to receive the higher disability compensation rate associated with his March 14, 2006, compensable back injury.
17. Defendant-Employer has paid Sickness Accident payments to Plaintiff since March 29, 2006. Plaintiff receives approximately $410.00 per week in benefits. There is no indication that Plaintiff paid any portion of the premiums for these benefits. Any credit for these benefits would be subject to N.C. Gen. Stat. § 97-42, and should be subject to a reduction of 25% in allowance for an attorney's fee to be awarded to Plaintiff's counsel.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW *Page 9 
1. On or about March 14, 2006, Plaintiff sustained a compensable low back injury arising out of and in the course of his employment with Defendant-Employer which was the direct result of a specific traumatic incident of the work assigned, and which aggravated Plaintiff's pre-existing low back condition. N.C. Gen. Stat. § 97-2(6).
2. As a consequence of his lower back injury, Plaintiff needed medical treatment, including the medical treatment rendered by Dr. Charya. Defendants are responsible for payment for the same. N.C. Gen. Stat. §§ 97-2(19), 97-25.
3. Plaintiff's March 14, 2006, low back injury, combined with his existing neck injury, resulted in Plaintiff becoming temporarily totally disabled from work as of March 29, 2006, at which time Plaintiff was told by Defendant-Employer that Defendant-Employer had no work available for Plaintiff within his work restrictions. Although Plaintiff's subsequent work restrictions following his March 14, 2006, low back injury were the same as those Plaintiff would have been given based only on his prior neck injury, because those restrictions were in fact based on both the neck injury and the low back injury, it follows that Plaintiff is entitled to disability compensation at the maximum compensation rate in effect for 2006 of $730 per week. N.C. Gen. Stat. § 97-29, Hoyle v. Carolina Associated Mills, 122 N.C.App. 462, 465-66,470 S.E.2d 357, 359 (1996) ("If the work-related accident `contributed in "some reasonable degree"' to plaintiff's disability, [he] is entitled to compensation.").
4. Given Plaintiff's permanent restrictions and his age, education, and work experience, and considering Defendant-Employer's failure to provide suitable employment due to both Plaintiff's neck and lower back injuries, it would have been futile for Plaintiff to look for work with another employer, and Plaintiff therefore continues to be totally disabled. Plaintiff is entitled to ongoing benefits at the rate of $730 per week until further order of the Commission. *Page 10 
N.C. Gen. Stat. § 97-29; Russell v. Lowes Product Distribution,108 N.C. App. 762, 425 S.E.2d 454 (1993).
5. The Sickness Accident payments made by Defendant-Employer to Plaintiff after March 29, 2006, were not "due and payable" when made within the meaning of N.C. Gen. Stat. § 97-42, insofar as Plaintiff's lower back injury, the reason he went out of work at that time, had not been accepted as compensable. Therefore, these payments are subject to a credit, within the discretion of the Commission. Foster v.Western-Electric Co., 320 N.C. 113, 357 S.E.2d 670 (1987). In its discretion, the Commission awards the credit, and also concludes that the credit for Sickness Accident payments should be reduced by twenty-five percent in consideration of the attorney's fee to be awarded to Plaintiff's counsel. Church v. Baxter Traveno Labs, Inc.,104 N.C. App. 411, 409 S.E.2d 715 (1991). 6. Because Dr. Charya, an authorized treating physician, has assessed Plaintiff with mild depression and anxiety related to his injuries, Defendants shall be responsible for reasonably necessary medical treatment for the same, including the Zoloft prescriptions from Dr. Charya. N.C. Gen. Stat. §§ 97-2(19), 97-25.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay all expenses for reasonably necessary medical treatment for Plaintiff's lower back injury of March 14, 2006, including payment for treatment rendered by Dr. Charya and treatment for related mild depression and anxiety. *Page 11 
2. Subject to the attorney's fee and credits allowed herein, Defendants shall pay Plaintiff benefits at the rate of $730.00 per week as temporary total disability compensation, beginning March 29, 2006, and continuing until further order of the Commission. All accrued benefits shall be paid in a lump sum.
3. Defendants are awarded a credit for Sickness Accident payments made to Plaintiff. However, in consideration of the attorney's fee herein awarded, the credit shall be reduced by twenty-five percent of the amount paid in Sickness Accident benefits.
4. Defendants shall pay directly to Plaintiff's counsel a reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation awarded to Plaintiff herein before the credit, i.e., twenty-five percent based upon compensation at the rate of $730 per week, or $182.50 per week as attorney's fees. The accrued attorney's fee shall be paid directly to Plaintiff's counsel. For future compensation, every fourth check, or 25% of each check due Plaintiff, shall be paid directly to Plaintiff's counsel.
5. Defendants shall pay the costs.
This the ___ day of May, 2008.
 S/_____________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_____________ BUCK LATTIMORE COMMISSIONER *Page 12 
 S/_____________ LAURA K. MAVRETIC COMMISSIONER