While the Commission may assess a reasonable attorney's fee for the plaintiff against the insurer upon review of any appeal by the insurer that concludes with an award to the claimant,Harwell v. Thread, 78 N.C. App. 437, 337 S.E.2d 112 (1985), it normally exercises its discretion to do so only when the insurer's appeal is so lacking in merit that it is perceived to be an unfair imposition on the plaintiff. That is not the case here. Instead, the amount in controversy is so small that, but for the professionalism of her counsel, plaintiff might not be represented on appeal. The fee award below is made in furtherance of the Commission's policy that parties "should have a reasonable opportunity to vindicate every right granted by the Act". Church v. Baxter Travenol Laboratories, Inc., I.C. No. 808478, 26 July 1990, aff'd 104 N.C. App. 411, 409 S.E.2d 715
(1991).
Dr. Dye offered a "rating" opinion in the terms usually used for a functional impairment, but testified that it was based on his subjective judgment, rather than either the Commission's or the American Medical Association (AMA) Impairment Guide, and that, but for her scar, he might not have given plaintiff a rating at all. Disability ratings following successful carpal tunnel release surgery are generally small because only slight functional impairment remains, although the patient may well be susceptible to recurrence for the same reasons that the condition arose. The inference of the evidence is that the equitable award for disfigurement would be greater than a permanent partial disability award per N.C. Gen. Stat. § 97-31(12), and thus she is entitled to the former. Whitley v. Columbia Mfg. Co., 318 N.C. 89, 97,348 S.E.2d 336 (1986).
Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, except to MODIFY by adding or changing Findings of Fact #13 and #14, Conclusion of Law #3 and Award #1 and #2, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
The Full Commission finds as facts and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as
STIPULATIONS
1. All stipulations contained in the Pre-Trial Agreement are received into evidence.
2. A copy of the Short Term Disability Policy Procedures marked as exhibit 1 stipulated was received into evidence. The parties stipulated that this policy is incorporated in a collective bargaining agreement covering the plaintiff and defendant-employer.
3. A copy of [a record of] the disability pay received by plaintiff marked as stipulated exhibit 2 was received into evidence.
4. The parties stipulated that plaintiff has received her full salary under a short term disability plan fully funded by the defendant-employer. [Plaintiff abandoned her appeal of the credit awarded for these payments in her brief to the Full Commission.]
5. The parties stipulated that the Commission should resolve the issue of disfigurement if there was no permanent partial disability compensation awarded in this matter.
6. Subsequent to the hearing, the parties submitted a stipulation to the average weekly wage. This stipulation was marked as exhibit 3 stipulated and received into evidence.
****************
Based upon all of the competent evidence in the record, the Full Commission makes the following
FINDINGS OF FACT
1. At the time of the hearing, the plaintiff was a twenty-five year-old female with a high school education.
2. Plaintiff was employed by the defendant-employer as a warehouse worker. Plaintiff worked in the order fulfillment department for the defendant-employer. Plaintiff worked in the 200, 300, 400, 500, and 600 sections of the department picking CDs, albums, and cassette tapes to fill customer orders. Plaintiff used the thumb and index finger on her right hand to pick up from between one to five cassettes or CDs at a time from bins or carousels. Also, plaintiff would use her thumb and index fingers of both hands to grip the flaps of cardboard cartons and lift and move these cartons short distances. The cartons she lifted contained CDs, tapes and albums, and they were at different weights depending on the number of items packed in the boxes. The weights varied from very light to ten pounds and even twenty-four pounds on occasions. Plaintiff would lift these cartons using her thumb and index fingers up to one hundred and fifty times a day and sometimes up to eight hundred times a day.
3. Plaintiff experienced some soreness and tenderness in her hands a couple of weeks before July 8, 1994, while she was picking CDs and cassette tapes from a carousel in the 200 area.
4. On July 8, 1994, plaintiff was working in the 200 area moving four or five boxes weighing twenty-four pounds for a distance of approximately three feet. Plaintiff was holding these boxes by the flaps using her thumb and index fingers. While moving these boxes, plaintiff heard something pop and felt sudden pain in her right wrist. Plaintiff experienced some pain in her left wrist as well. Later that day, the pain had not resolved so plaintiff filled out a written accident report.
5. Following July 8, 1994, the soreness persisted in plaintiff's right wrist over the next three days when she was off work on the weekend and when she was assigned on the following Monday to do light duty activity applying labels to boxes.
6. On July 12, 1994, plaintiff was assigned to return to picking orders in the 300 area. Upon returning to her regular job duties, plaintiff experienced increased pain in her right wrist. The defendant-employer sent plaintiff to receive medical treatment from Dr. Shores at Health and Hygiene.
7. On July 12, 1994, Dr. Shores began a conservative course of medical treatment that included the use of ice therapy through August 2, 1994. Dr. Shores diagnosed the plaintiff as having sustained bilateral tendonitis with a possible DeQuervain's tendonitis in plaintiff's right hand. Dr. Shores placed work restrictions on the plaintiff and gave her a splint to wear to work during this time period.
8. On August 2, 1994, the defendant-carrier denied liability in this matter. At that time, the defendant-employer no longer made light duty work available to the plaintiff.
9. Plaintiff sustained stenosing tenosynovitis in her right wrist as a result of the repetitive use of her right wrist in performing her job for the defendant-employer.
10. On August 4, 1994, plaintiff sought medical treatment for her right wrist from orthopedic surgeon, Dr. David Dye. Plaintiff began a course of conservative treatment that included ingestion of cortisone by mouth and injection of cortisone directly into plaintiff's right wrist. On September 2, 1994, Dr. Dye performed surgery on plaintiff's right wrist. Dr. Dye surgically split plaintiff's tendon sheath in her right wrist and released it giving the tendon more room to move. This surgery was necessary to effect a cure, relieve pain and or lessen plaintiff's disability.
11. Following the September 2, 1994, surgery, plaintiff began to experience a snapping and popping sound and pain in her right wrist. As a result of Dr. Dye's surgery, plaintiff's tendon was then loose enough to pop on a pre-existing sharp ridge of bone in the area where plaintiff's tendon had been released. As a direct and natural result of the disabling stenosing tenosynovitis that plaintiff had sustained arising out of and in the course of her employment with the defendant-employer, Dr. Dye performed a necessary second surgery on plaintiff's right wrist on October 7, 1994. Dr. Dye surgically removed the sharp ridge of bone and smoothed the rough edges. This surgery was necessary to effect a cure, relieve pain and or lessen plaintiff's compensable disability.
12. As a result of the stenosing tenosynovitis sustained to her right wrist, plaintiff was unable to work from August 3, 1994 through September 25, 1994 and from October 4, 1994 through November 6, 1994.
13. As a result of the plaintiff's compensable occupational disease and surgeries necessary to relieve the plaintiff of the resulting disability and medical complications of the initial surgery, plaintiff suffered serious bodily disfigurement at the right wrist, which is visible in the normal course of her employment and may reasonably be expected to effect her future capacity to earn wages, for which greater compensation is due than the alternative compensation payable for her permanent partial disability, being a proper and equitable award of $2,000.00.
14. As a result of plaintiff's repetitive use of her right wrist in the performance of her job for the defendant-employer, plaintiff has sustained a ten percent (10%) permanent partial disability to her right hand.
15. The hearing and proceedings before the Full Commission resulting in this award to make payments of benefits to the injured employee were brought on by the appeal of the insurer.
**************
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following
CONCLUSIONS OF LAW
1. Due to the trauma associated with the repetitive manner that she had to use with her right wrist in the course of her regular employment as a warehouse worker for the defendant-employer, plaintiff developed disabling stenosing tenosynovitis which is a specifically named occupational disease under the provisions of N.C. Gen. Stat. § 97-53(21) and thus a compensable claim. N.C. Gen. Stat. § 97-53(21).
2. Plaintiff is entitled to temporary total disability compensation at a rate of $203.43 per week for the time period beginning August 3, 1994 through September 25, 1994 and from October 4, 1994 through November 6, 1994. Defendants are entitled to a credit for all payments made to the plaintiff pursuant to the short term disability plan fully funded by the defendant-employer. N.C. Gen. Stat. § 97-42.
3. As a result of serious bodily disfigurement at the right wrist resulting from the occupational disease, the plaintiff is entitled to a proper and equitable award of $2,000.00. N.C. Gen. Stat. § 97-31(22).
4. Plaintiff is entitled to payment of all medical expenses resulting from her disabling tenosynovitis that tends or tended to effect a cure, give relief or lessen plaintiff's disability. N.C. Gen. Stat. § 97-25.
5. In the discretion of the Commission, plaintiff is entitled to recover a reasonable attorney's fee as a portion of the costs. N.C. Gen. Stat. § 97-88.
*************
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Defendants shall pay an equitable award of $2,000.00, in one lump sum, to plaintiff in respect to the disfigurement of her right wrist.
2. Defendants shall pay as a portion of the costs a reasonable attorney's fee equal to twenty-five percent of the compensation benefits awarded herein, or $500.00, which is approved for, and shall be paid directly to, plaintiff's attorneys of record without deducting from or diminishing the compensation herein awarded to the plaintiff.
3. Defendants shall pay the costs due this Commission.
4. Defendants shall pay an expert witness fee in the amount of $240.00 to Dr. Dye.
 S/ _____________________ J. RANDOLPH WARD COMMISSIONER
CONCURRING:
S/ ___________________ DIANNE C. SELLERS COMMISSIONER
S/ ___________________ COY M. VANCE COMMISSIONER
JRW:md