***********
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Dollar. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS
1. The Industrial Commission had jurisdiction over the subject matter of this case, the parties were properly before the Full Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Defendant was a duly qualified self-insured, with Gallagher Bassett Services, Inc., as the servicing agent.
3. The employee-employer relationship existed between the parties at all relevant times.
4. The employee earned an average weekly wage of $840.00, yielding a compensation rate of $560.03.
5. Plaintiff alleges he contracted a compensable occupational disease due to repetitive motion in the workplace, to wit, thoracic outlet syndrome, on or about February 11, 2000. Defendants have denied this claim pursuant to the I.C. Form 61 filed in this case on or about March 21, 2001.
6. The parties stipulated 324 pages of medical records into evidence.
7. The issues before the Commission are:
 a. Whether the plaintiff has contracted a compensable occupational disease, to wit, thoracic outlet syndrome, and if so, to what benefits may he be entitled under the Act; and
Whether plaintiff is entitled to temporary total disability, permanent partial disability, medical bills paid, and ongoing medical treatment for injuries sustained?
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a forty-four year old male. In 1995, he began working on defendant's chassis line in the cab swing area. By 1999, plaintiff was working as a back wall assembler helper and his duties included lifting the truck cab back wall, putting it on a large rack, and securing bolts and fasteners with a hydraulic gun.
2. Plaintiff was required to lift the aluminum walls, which were five feet high and five and one-half feet wide, weighing forty pounds. He carried most of the weight with his left hand and arm, and used the right arm to balance and position the walls. Plaintiff lifted each wall three to four times to perform specific jobs in the manufacturing process. He handled approximately thirty-six to forty cab walls per day. Plaintiff also lifted the interior sidewall and roof. He carried these walls a distance of ten feet between three workstations during the course of his work each day. At each workstation, plaintiff fastened, drilled, or prepared fasteners to complete the back wall and truck cab assembly.
3. In January of 2000, plaintiff began to experience sharp pains radiating down his left arm as he performed his job. He requested to be moved to another job, but no other work was provided.
4. On February 11, 2000, plaintiff reported severe left arm pain to the plant nurse, who referred him to Dr. Steven Manuli, an orthopaedist. After examination, Dr. Manuli diagnosed plaintiff with thoracic outlet syndrome. He ordered light duty work with no overhead work and no lifting over ten pounds.
5. Plaintiff returned to work, but found it difficult to lift tools, drills and "put guns" due to his shoulder and arm pain.
6. On April 28, 2000, Dr. Manuli diagnosed plaintiff with left neck and arm pain and arm numbness. After an MRI revealed small midline focal protrusions at C3-4 and C4-5, plaintiff was referred to Dr. Ranjan Roy, a neurosurgeon.
7. On June 14, 2000, plaintiff complained to Dr. Roy of neck pain with sub occipital headaches, numbness in the left ring and little finger and low back pain radiating to the left heel. Dr. Roy diagnosed plaintiff with thoracic outlet syndrome and referred him to Dr. Felix Evangelist, a board-certified thoracic surgeon.
8. On September 19, 2000, Dr. Evangelist initially examined plaintiff for left neck pain; left shoulder and parascapular pain which migrates to upper anterior chest, lateral breast, arm, elbow, forearm and hand; almost constant numbness in the left fourth and fifth fingers; severe headaches; left arm numbness at night; intermittent dizzy spells and blurred vision. Dr. Evangelist has diagnosed plaintiff with thoracic outlet syndrome and reflex sympathetic dystrophy.
9. Dr. Evangelist's treatment, including B-12 injections, muscle relaxers, and NST therapy, provided relief from plaintiff's symptoms.
10. On or about December 27, 2000, plaintiff submitted an I.C. Form 18 to report his thoracic outlet syndrome to his employer.
11. Defendant's servicing agent referred plaintiff to Dr. Thomas Noonan, an orthopaedist. Dr. Noonan confirmed the thoracic outlet syndrome diagnosis and recommended plaintiff treat with Dr. Evangelist. As of January 3, 2001, Dr. Noonan restricted plaintiff to light duty work with no lifting over five pounds and no repetitive use of the arm.
12. Despite a recommendation by its evaluating doctor, defendant's servicing agent did not authorize plaintiff to return to Dr. Evangelist for treatment.
13. On January 29, 2001, plaintiff filed a request for authorization to treat with Dr. Evangelist with the Industrial Commission.
14. Defendant referred plaintiff to Dr. James Boatright, an orthopaedist, for an Independent Medical Evaluation. On February 16, 2001, Dr. Boatright found plaintiff had a five percent permanent partial impairment to the left arm, but he did not diagnose plaintiff's condition nor did he recommend any treatment.
15. Dr. Boatright has since opined that plaintiff's job likely aggravated the thoracic outlet syndrome.
16. Plaintiff last worked for defendant on April 5, 2001, after Dr. Evangelist wrote him out of work.
17. Plaintiff has not reached maximum medical improvement.
18. Plaintiff has received short-term disability through an employer-funded plan beginning on or about April 6, 2001. As of the date of the Deputy Commissioner hearing, defendant has paid $28,716.87 in disability benefits to plaintiff.
19. The competent evidence in the record establishes that plaintiff's conditions are characteristic of and peculiar to, and were caused by the repetitive activity on plaintiff's job.
20. Plaintiff requires future medical treatment to provide relief for his thoracic outlet syndrome and reflex sympathetic dystrophy, potentially including decompression surgery.
21. Plaintiff has been enrolled in classes at Rowan Cabarrus Community College since 1997. Plaintiff increased his course hours after being disabled from work and expects to graduate with an Industrial Management degree in 2003.
22. Defendant has not offered plaintiff vocational assistance to obtain work suitable to his restrictions since April 6, 2001.
23. Defendant appealed the Deputy Commissioner's Opinion and Award, and the Full Commission affirmed said Opinion with compensation being paid to the plaintiff.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff bears the burden of proving each element of compensability in order to prove the existence of an occupational disease within the meaning of N.C. Gen. Stat. § 97-53(13). This requires the plaintiff to show that (1) the disease must be characteristic of a trade or occupation; (2) the disease must not be an ordinary disease of life to which the public is equally exposed outside of the employment; and (3) there must be proof of causation. Hansel v. Sherman Textiles, 304 N.C. 44,283 S.E.2d 101 (1981). In the instant case, plaintiff has established these elements.
2. As a result of his compensable occupational disease, plaintiff has been unable to work on a regular basis and is entitled to temporary total disability compensation at the rate of $560.03 per week for the period from April 6, 2001 and continuing until the plaintiff returns to work or until further order of the Commission. N.C. Gen. Stat. § 97-29.
3. Plaintiff timely requested the Industrial Commission to authorize treatment with Dr. Evangelist, and the same is herein approved. N.C. Gen. Stat. § 97-89.
4. Plaintiff is entitled to have defendant pay for medical expenses incurred or to be incurred as a result of the compensable injury as may be required to provide relief, effect a cure or lessen the period of disability. N.C. Gen. Stat. §§ 97-2(19), 97-25.
5. Defendant is entitled to a credit for disability benefits paid to plaintiff through the employer-funded plan. N.C. Gen. Stat. § 97-42. However, said credit shall be reduced by twenty-five percent. Church v.Baxter Travenol Laboratories, Inc., 104 N.C. App. 411, 409 S.E.2d 715
(1991).
6. Defendant appealed the Deputy Commissioner's Opinion and Award and the Full Commission affirmed said opinion with compensation being paid to the plaintiff. In the discretion of the Full Commission, counsel for the plaintiff is entitled to have defendants pay an attorney's fee in the amount of $1,000.00 which is in addition to the amount awarded as a percentage of the plaintiff's compensation. N.C. Gen. Stat. § 97-88.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, defendant shall pay temporary total disability compensation to plaintiff at the rate of $560.03 per week for the period from 6 April 2001 until the present. As much of said compensation as has accrued shall be paid in a lump sum. Defendant is entitled to a credit, in accordance with paragraph 5 of the Conclusions of Law.
2. Defendant shall pay medical expenses incurred or to be incurred when bills for the same have been approved, in accordance with the provisions of the Act.
3. As plaintiff has not reached maximum medical improvement, this Opinion does not address this issue. However, in the event that the parties should be unable to agree on the amount of permanent partial disability compensation which may be due plaintiff, either party may request a hearing from the Commission to resolve this matter.
4. A reasonable attorney's fee of twenty-five percent of the compensation awarded to plaintiff in paragraph 1 above is hereby approved to be deducted from sums due plaintiff and paid directly to counsel. The calculation of attorney's fees shall be based on the full amount of the award prior to the deduction of defendant's credit for short-term disability benefits.
5. Defendants shall pay to counsel for the plaintiff an attorney's fee in the amount of $1,000.00 for defending this matter on appeal to the Full Commission. This fee is to be paid in addition to the fees awarded as a percentage of the plaintiff's compensation.
6. Defendant shall pay the costs.
This the 8th day of October, 2003.
 S/_____________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/__________ THOMAS BOLCH COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER