***********
This matter was reviewed by the Full Commission based upon the record of the proceedings before Deputy Commissioner Houser, along with the briefs and arguments on appeal. The appealing party has shown good grounds to reconsider the evidence. The Full Commission REVERSES the Deputy Commissioner's holding and enters the following Opinion and Award.
 ***********
The undersigned finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy as:
 STIPULATIONS
1. On 19 July 2002, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On that date, an employment relationship existed between plaintiff-employee and defendant-employer.
3. On the relevant dates herein, the carrier on the risk was the Insurance Company of the State of Pennsylvania, with AIG Claim Services as the third party administrator.
4. Plaintiff's average weekly wage is $531.28, which yields a compensation rate of $354.20.
5. On 19 July 2002, plaintiff was involved in an accident arising out of and in the course of his employment with defendant-employer. Defendants deny that this accident resulted in any injury.
6. Plaintiff did not work for defendant-employer during the period of 14 February 2003 through 2 March 2003. Plaintiff has not worked for defendant-employer since 26 March 2003.
7. Defendants have paid plaintiff no indemnity compensation.
8. Plaintiff has received Short Term Disability Benefits and currently receives Long Term Disability Benefits from a plan that was fully funded by defendant-employer. Pursuant to this plan, plaintiff received Short Term Disability Benefits during the period of 14 February 2003 to 5 September 2003 at the rate of $288.00 per week. The total amount received by plaintiff during this period was $7,488.00. Plaintiff has also received Long Term Disability Benefits during the period of 5 September 2003 through the present at the monthly rate of $1,248.00. As of 31 December 2003, plaintiff had received a total of $12,313.60 in Long Term Disability Benefits.
9. At and subsequent to the hearing before the Deputy Commissioner, the parties submitted the following:
a. A Notebook of Stipulated Exhibits, which was admitted into the record, and marked as Stipulated Exhibit (1) and which included a Pre-Trial Agreement, Industrial Commission Forms, Interrogatory Responses, Medical Records and Employment Records;
b. A Packet of Plaintiff's Time Records, which was admitted into the record, and marked as Stipulated Exhibit (2);
c. A Transcript of Plaintiff's Recorded Statement, which is admitted into the record, and marked as Stipulated Exhibit (3);
d. Additional Medical Records, which are admitted into the record, and marked collectively as Stipulated Exhibit (4) and;
e. A Correspondence from Ms. Karen Drake dated 17 April 2003, which is admitted into the record, and marked as Stipulated Exhibit (5).
 ***********
Based upon all the evidence adduced from the record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 30 years of age, with his date of birth being 31 August 1973. Plaintiff is a high school graduate, but has had no other specialized education or vocational training. Plaintiff's work experience includes jobs in the fast food industry, working as a jailer in Warren County, driving a school bus, driving a dump truck, working as construction laborer, and bagging groceries.
2. Plaintiff began his employment with defendant-employer as a roll-off truck driver on 6 October 1999. In this capacity, plaintiff was responsible for driving a truck to various locations to obtain open garbage containers, also referred to as boxes. The truck used by plaintiff had a hook. The hook would attach to the container in order to lift the container onto the truck. Plaintiff worked with different types of containers, but he most often worked with open boxed containers, compactors, and glass containers. Each container had different requirements relative to loading the container onto the truck. On average, it took ten to fifteen minutes to load a container onto the truck. Plaintiff would then transport these containers to a dump or transfer station. After arriving at the dump or transfer station, plaintiff was responsible for opening the container and emptying its contents. Plaintiff's job required significant bending, stooping, pulling, and lifting.
3. On 19 July 2002, while in the course and scope of his duties for defendant-employer, plaintiff was at a transfer station where he was preparing to empty a container. In the process of performing this task, plaintiff opened the swinging door on the container. Inside the container was a large wooden pallet stuck to or hung on the inside of the door. However, plaintiff did not immediately see the wooden pallet. As he opened the door, a co-worker yelled at plaintiff to caution him. It was at that moment that plaintiff saw the pallet falling. Plaintiff then turned to run away from the falling pallet, but his foot slipped and the pallet struck him in the back. Following this incident, plaintiff experienced an aching, throbbing pain across his back that radiated into his legs.
4. Subsequent to this incident, plaintiff reported it immediately to Ms. Margaret Hicks, defendant-employer's dispatcher. Over time, his low back pain diminished, but that his leg symptoms persisted. Despite these ongoing symptoms, plaintiff continued working and did not seek medical treatment until 12 February 2003. Plaintiff described the pain in his legs as a tingling type of pain, and testified that he initially believed this was caused by his having eaten too much pork. Also, throughout this period, plaintiff testified that he continued to report his symptoms to Ms. Shirley Lewis, a co-worker, and Ms. Hicks.
5. During the night of 11 February 2003, plaintiff got out of bed to use the restroom and was unable to stand. Plaintiff went to the emergency room of Maria Parham hospital on 12 February 2003. Plaintiff reported that he injured his back at work when he was struck by a wooden pallet. The emergency room physician excused plaintiff from all work for 2 days and referred plaintiff to Dr. Khan Vu.
6. Following an examination during which plaintiff was unable to stand straight and exhibited a straight leg test that was positive at 30 degrees on the left, Dr. Vu excused plaintiff from work for 10 days and referred him to physical therapy. Later, Dr. Vu extended this out-of-work period through 26 February 2003 and proscribed physical therapy. Plaintiff attempted a trial return to work for defendant-employer on 3 March 2003.
7. On 17 March 2003 plaintiff was evaluated by Dr. J.E. Kenney, who referred him to Dr. Gary L. Kaplowitz and excused plaintiff from work through 24 March 2003. Plaintiff reported to Dr. Kenny that he had been struck in the back by a pallet at work. On 24 March 2003, plaintiff reported to Dr. Kaplowitz and again stated that he had injured his back at work when a pallet fell and struck him in the back. Dr. Kaplowitz examined plaintiff and ordered a MRI. On 16 April 2003, Dr. Kaplowitz reviewed the MRI, which revealed a herniated disc at the L4-L5 level. Dr. Kaplowitz recommended that plaintiff participate in physical therapy before considering surgery. Thereafter, Dr. Kaplowitz excused plaintiff from all work until he could be evaluated by a neurosurgeon.
8. On 13 August 2003, plaintiff was examined by Dr. Bruce Kihlstrom, a neurosurgeon. Plaintiff provided Dr. Kihlstrom with the same history he had provided to Dr. Kaplowitz. Following an examination, Dr. Kihlstrom diagnosed plaintiff as having a herniated disc at the L4-L5 level with bilateral lower extremity paresthesia consistent with radiculopathy. On 15 October 2003, Dr. Kihlstrom recommended surgery to treat plaintiff's herniated disc, and this was performed on 23 December 2003. Dr. Kihlstrom last evaluated plaintiff on 3 March 2004. At that time, he continued to excuse plaintiff from all work.
9. Having considered the testimony of Drs. Kihlstrom, Klapowitz, and Vu, along with their relative expertise and the bases for their opinions, the undersigned gives greater weight to the testimony of Drs. Kihlstrom and Klapowitz that plaintiff's herniated disc at L4-L5 was caused or significantly contributed to by the accident of 19 July 2002.
10. As a result of his herniated disc, plaintiff was rendered totally incapable of earning wages in any employment from 12 February 2003 through 2 March 2003 and from 17 March 2003 through the present.
11. Plaintiff has not reached maximum medical or vocational employment.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. On 19 July 2002 plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. As a result of his 19 July 2002 injury, plaintiff is entitled to payment of temporary total disability compensation of $354.20 per week from 12 February 2003 through 2 March 2003 and continuing from 17 March 2003 until he returns to work or until further order of the Industrial Commission. Defendants are entitled to a credit for short and long term disability benefits paid to plaintiff but excluding the twenty-five percent attorney's fees approved for plaintiff's counsel for those sums. N.C. Gen. Stat. §§ 97-2(6); 97-42; Church v. Baxter Travenol Labratories,Inc., 104 N.C. App. 411 (1991).
3. Plaintiff is entitled to payment of all medical expenses incurred for treatment of his 19 July 2002 injury, including payment of future medical expenses. N.C. Gen. Stat. §§ 97-25, 97-25.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay compensation to plaintiff at the rate of $354.20 per week from 12 February 2003 through 2 March 2003 and continuing from 17 March 2003 until he returns to work or further order of the Commission. This award is subject to a credit due defendants for the short and long term disability benefits paid to plaintiff during the period of his disability except that the credit is hereby reduced by twenty-five percent. To the extent that this compensation has accrued it shall be paid in a lump sum subject to the attorney's fee hereinafter approved.
2. Defendants shall pay all medical expenses incurred for treatment of plaintiff's 19 July 2002 injury, including payment of future medical expenses.
3. A reasonable attorneys fee in the amount of twenty-five percent of the lump sum due plaintiff in paragraph 1 above is hereby approved and to be deducted from sums due plaintiff and paid directly to counsel. The calculation of attorney's fees shall be based on the full amount of the award prior to the reduction for the credit due defendants for short and long-term disability benefits. Thereafter, every fourth check shall be sent directly to plaintiff's counsel.
4. Defendants shall pay the costs of this appeal.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/____________________ THOMAS JEFFERSON BOLCH COMMISSIONER
DISSENTING:
 S/____________ BUCK LATTIMORE CHAIRMAN