***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon review of the evidence reverses the Opinion and Award of the deputy commissioner.
 ***********
The undersigned finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the deputy commissioner as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Electric Insurance Company was the carrier on the risk at all relevant times.
3. The employee-employer relationship existed between the parties at all relevant times.
4. Plaintiff's average weekly wage was $774.15, which yields a compensation rate of $516.05.
5. The parties stipulated medical records and Industrial Commission forms into evidence.
6. Further, the parties stipulate that the size of the steel sheets with which plaintiff worked was 4-feet by 10-feet.
 ***********
Based upon all of the competent evidence adduced from the record and the reasonable inferences therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of hearing before the deputy commissioner on 31 October 2003, plaintiff was fifty-two years old and a high school graduate. He had worked for defendant-employer since 1976. Defendant-employer manufactures industrial lighting panels similar to circuit breaker boxes. Plaintiff rotated through various jobs in the plant. For the last three years of his employment, he worked in manual fabrication as an assembler on first shift.
2. As of 4 January 2003, plaintiff was assigned to the pick-up line. Plaintiff was then rotated to a job in the manual fabrication area to work on a new product because defendant-employer was behind in production. On this new job rotation, plaintiff operated the Cincinnati shear machine at the start of the fabrication process. His duties included cutting down 4-feet by 10-feet sheets of steel into smaller sheets called blanks. The sheets of steel came in bundles. Each sheet weighed 83.64 pounds and was coated with lubricating oil. Plaintiff was required to pull the sheets of steel apart and load them onto the shear table. To do this, he would shake the edge of the sheet to get air between the sheets to facilitate moving it onto the shear table to be processed in the machine.
3. On 22 January 2003, a sheet of steel that plaintiff was moving to the shear machine caught on something. When plaintiff continued pulling the sheet, he felt a burning sensation and tingling in his chest, left shoulder and the side of his neck. Plaintiff immediately sought first aid with Occupational Health Nurse Sue Dierksen. She examined plaintiff and recommended ibuprofen and a hot and cold pack for plaintiff's sore muscles. Nurse Dierksen completed an Associate Health Report to document plaintiff's complaints and her findings. She did not recommend that plaintiff see a doctor. Plaintiff continued to work.
4. Prior to 22 January 2003, plaintiff had never experienced pain or discomfort in his chest, left shoulder or neck. Plaintiff had, however, sustained a low back sprain in 2000.
5. On 31 January 2003, plaintiff returned to Nurse Dierksen, reporting that his left shoulder felt better, but his neck was sore. He continued to work. Plaintiff again returned to Nurse Dierksen on 4 February 2003 with complaints of upper arm soreness. On 21 February 2003, Nurse Dierksen advised plaintiff to schedule an appointment with Dr. Stephen Furr at Centralina Orthopaedic and Sports Medicine. She prepared a Form 19 employer's report of injury, which noted that plaintiff "states he felt discomfort in the left shoulder (trapezius) blade area, unsure of exact incident. States he rotated to this job three weeks earlier and part of the job is picking up blank sheets of steel for machine."
6. Plaintiff reported his neck pain to his supervisor, Eric Pate, on 27 February 2003. Plaintiff reported that his neck pain was due to a work-related injury. Defendant-employer prepared a second Form 19 employer's report of injury for plaintiff's neck injury.
7. On 24 February 2003, plaintiff presented to Dr. Furr complaining of a pulling in the mid posterior trapezial area on the left side, and a burning sensation, numbness and tingling along the anterior chest region. He reported that he had injured himself while at work. X-rays showed decreased C5-6 space with anterior spurring. Dr. Furr diagnosed plaintiff with cervical strain, left trapezial strain and cervical arthritic changes and ordered an MRI and EKG. Dr. Furr prescribed Sterapred 12-day low-dose Dosepak and Vioxx.
8. The MRI revealed degenerative changes throughout C3-T1. On 17 March 2003, Dr. Furr noted in his medical notes that plaintiff's injury was potentially related to the reported work injury in January 2003. Medical notes from 19 March 2003 indicate that the results of the diagnostic studies' were consistent with left medial and ulnar nerve mononeuropathies at or near the wrist and left upper cervical radiculopathic changes at C4. On 14 April 2003, plaintiff complained of numbness in his face and pain in the side of his neck. Dr. Furr restricted him to no overhead activity and no getting down on his knees until Dr. Ranjan Roy, a neurosurgeon, could see him.
9. On 13 May 2003, Dr. Roy examined plaintiff. He noted that plaintiff's MRI clearly showed disc protrusion and spondylosis at C3-4, moderate at C4-5 and severe bilaterally at C5-6. Dr. Roy recommended epidural injections for plaintiff. After the injections failed to provide relief, Dr. Roy performed an anterior cervical diskectomy and fusion on plaintiff from C3-C7 on 29 May 2003. After the surgery, plaintiff was temporarily totally disabled from work from 29 May 2003 to 19 August 2003, the date he returned to work.
10. Defendants denied plaintiff's claim via a Form 61 filed on 21 May 2003.
11. Plaintiff filed a Form 18 employee's report of injury on 1 July 2003, upon which he noted, "while moving 4' x 10' sheets of steel on to manual shear table, I felt a burning in left shoulder, front and rear, immediately followed by tingling in left side of neck and left shoulder, neck became very tight and sore."
12. Based on the greater weight of the evidence, on 22 January 2003, plaintiff sustained an injury to his neck, chest and left shoulder arising out of and in the course of his employment, when a sheet of steel that he was moving unexpectedly got caught on something, causing plaintiff pain in his left shoulder, chest and neck when he continued to pull the sheet of steel.
13. Plaintiff's neck injury occurred as a direct result of a specific traumatic incident of the work assigned. When plaintiff continued to pull on the sheet of steel that had caught on something, he felt a burning and tingling in his chest that went up into the side of his neck. Plaintiff sought medical attention immediately from the plant nurse.
14. Plaintiff's injury to his chest and left shoulder resulted from an accident within the meaning of the Workers' Compensation Act. Although there was evidence that the steel sheets were sometimes difficult to maneuver, when the steel sheet caught on something on 22 January 2003, it was an unexpected occurrence that plaintiff did not design, and it constituted an interruption of his work routine and the introduction of an unusual condition likely to result in unexpected consequences. The incident therefore constituted an accident within the meaning of the Workers' Compensation Act. Plaintiff's testimony on how and when his injuries to his chest, shoulder and neck occurred is accepted as credible.
15. Based on the greater weight of the evidence, plaintiff's disability arose primarily from his need for neck surgery. Plaintiff underwent an anterior cervical diskectomy fusion from C3-C7. At the initial hearing before the Deputy Commissioner no medical expert opinion testimony was presented on whether plaintiff's need for surgery was caused by his work-related neck injury. Plaintiff was not represented by an attorney at that hearing. The Full Commission reopened the record for the presentation of testimony from plaintiff's medical provider.
16. A portion of plaintiff's medical treatment was paid by group health insurance. Plaintiff received some disability benefits through employer-funded short-term disability insurance. Plaintiff's group health insurance refused to pay for his Orthofix collar, which went over his neck brace.
17. Plaintiff returned to work on 19 August 2003 at the same or greater wages.
18. The parties deposed Dr. Ranjan Roy on 12 February 2005. The parties stipulated that Dr. Roy was an expert in the field of neurosurgery. Based on the Industrial Commission's Rating Guidelines, Dr. Roy assigned Plaintiff a 14.5 percent permanent partial disability rating as a result of Plaintiff's 22 January 2003 accident.
19. Dr. Roy concluded that Plaintiff's need for surgery was caused by his work-related neck injury based upon the following: plaintiff never had any previous symptoms related to his neck or to his arm; he had an acute onset of left shoulder pain, trapezius strain and neck pain after his accident on 22 January 2003; his changes at levels C4-5 and C5-6 were more than likely preexisting; and that the disc protrusion a C3-4 was a direct result of the work-related accident, causing plaintiff the trapezius pain, shoulder pain and the weakness in the left shoulder. Based on the greater weight of the evidence, plaintiff's injury by accident on 22 January 2003 aggravated or accelerated the preexisting conditions that Plaintiff had in his neck and also, directly caused the disc protrusion at C3-4 and the need for surgery.
20. Based upon the evidence of record, Plaintiff received short term disability benefits from a solely employer-funded program in the amount of $475.00 per week for the time frame from May 29, 2003 until August 19, 2003, which amounts to $5,633.50.
 ***********
The foregoing findings of fact engender the following:
 CONCLUSIONS OF LAW
1. On 22 January 2003, plaintiff sustained an injury to his neck, left shoulder and chest, which arose out of and in the course of his employment when the sheet of steel that he was pulling unexpectedly got caught on the shear machine, causing pain in his left shoulder, chest and neck when as continued to pull the sheet of steel. Plaintiff's injury to his neck occurred as the direct result of a specific traumatic incident of the work assigned and therefore constituted an injury by accident. Plaintiff's injury to his left shoulder and chest also constituted injuries by accident within the meaning of the Workers' Compensation Act. N.C. Gen. Stat. § 97-2(6).
2. Pursuant to the Act, an injury is compensable only if it is caused by an "accident." N.C. Gen. Stat. § 97-2(6); Calderwood v.Charlotte-Mecklenburg Hosp. Auth., 135 N.C. App. 112, 115,519 S.E.2d 61, 63 (1999). An "accident" is "an unlooked for and untoward event which is not expected or designed by the person who suffers the injury." Moose v. Hexcel-Schwebel, ___ N.C. App. ___, 592 S.E.2d 615
(2004). An accident is inferred when the employee's work routine is interrupted and the introduction of those unusual conditions results in unexpected consequences. Konrady v. U.S. Airways, Inc., 165 N.C. App. 620,599 S.E.2d 593 (Filed: Aug. 3, 2004) (quoting Gunter v. Dayco Corp.,317 N.C. 670, 673, 346 S.E.2d 395, 397 (1986). Therefore, to "be an accident, the incident must have been for the employee an "unlooked for and untoward event." Konrady, supra (quoting Cody v. Snider Lumber Co.,328 N.C. 67, 70, 399 S.E.2d 104, 106 (1991)). See also Lineback v. WakeCounty Bd. Of Comm'rs, 126 N.C. App. 678, 681, 486 S.E.2d 252, 254-55
(1997). Although there was evidence that the steel sheets were sometimes difficult to maneuver, when the steel sheet plaintiff was moving on 22 January 2003 caught on something while he was pulling it, this occurrence was an unlooked for and untoward event that was not expected or designed by plaintiff. It constituted an interruption of his work routine and the introduction of an unusual condition likely to result in unexpected consequences.
3. A claim for injury to the neck, which is part of the back, is compensable if it arises out of and in the course of employment and is the direct result of a specific traumatic incident of the work assigned. N.C. Gen. Stat. § 97-2(6). The words "specific" and "incident" mean that the trauma or injury must not have developed gradually, but must have occurred at a cognizable time. Bradley v. E.B. Sportswear, Inc.,77 N.C. App. 450, 452, 335 S.E.2d 52, 53 (1985). Plaintiff's testimony on how and when the injury to his neck occurred is accepted as credible and establishes a specific traumatic incident as a direct result of the work assigned.
4. Plaintiff's disability primarily arose from his neck injury and resulting surgery. Plaintiff underwent an anterior cervical fusion and was temporarily totally disabled from 29 May 2003 through 19 August 2003 due to the surgery. N.C. Gen. Stat. § 97-2(9).
5. Plaintiff is entitled to temporary total disability compensation in the amount of $516.05 per week for the period from 29 May 2003 through 19 August 2003. N.C. Gen. Stat. §§ 97-29; 97-2(5).
6. Plaintiff has met his burden of proving the existence of, and extent of his permanent partial disability and temporary total disability.
7. As a direct result of the compensable injury by accident, plaintiff is entitled to 43.5 weeks of compensation at the rate of $516.05 per week for the 14.5% permanent functional impairment to his back. N.C. Gen. Stat. § 97-31(23).
8. Defendants are obligated to pay for all medical expenses incurred or to be incurred by plaintiff for the treatment of his injuries by accident for so long as such treatment is reasonably required to effect a cure, give relief, and/or lessen plaintiff's disability. N.C. Gen. Stat. § 97-25.
9. Defendants are entitled to a credit for short-term disability benefits paid to plaintiff through the employer-funded plan. N.C. Gen. Stat. § 97-42. However, said credit shall be reduced by twenty-five percent 25% which shall be payable to plaintiff's attorney as part of his attorney's fee award. Church v. Baxter Travenol Laboratories, Inc.,104 N.C. App. 411, 409 S.E.2d 715 (1991).
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Plaintiff is entitled to temporary total disability compensation in the amount of $516.05 per week for the period from 29 May 2003 through 19 August 2003 subject to defendant's credit and the attorney's fee awarded below.
2. Subject to the attorney's fee awarded below, Defendants shall pay Plaintiff permanent partial disability compensation at the rate of $516.05 per week for 43.5 weeks.
3. Defendants shall pay all of Plaintiff's medical expenses which reasonably resulted from his compensable injury for so long as such medical treatment is reasonably required to effect a cure, provide relief or lessen his disability when bills are submitted and approved according to procedures adopted by the Commission, including the group health insurance payor.
4. From the temporary total disability payable to plaintiff, defendant shall receive a credit for short-term disability benefits paid to plaintiff. However defendant's credit is reduced by twenty-five percent 25% which shall be deducted and paid directly plaintiff's attorney.
5. A reasonable attorney's fee of twenty-five percent of the sums awarded plaintiff in paragraph 1 and 2 above is hereby approved for plaintiff's attorney and shall be deducted from sums due Plaintiff and paid directly to Plaintiff's counsel.
6. Defendants shall pay the cost.
This the ___ day of September 2005.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/__________ THOMAS BOLCH COMMISSIONER
 S/_____________ PAMELA T. YOUNG COMMISSIONER