***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, modifies and affirms the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over this matter. *Page 2 
2. All parties are subject to and bound by the North Carolina Workers' Compensation Act.
3. All parties have been properly designated, and there is no question as to joinder or non-joinder of parties.
4. An employment relationship existed between plaintiff and employer-defendant on January 28, 2005, and June 2, 2005.
5. Liberty Mutual Insurance Company was the carrier for employer-defendant on January 28, 2005, and June 2, 2005.
6. On the record at the hearing of this matter, plaintiff stipulated that he is presently claiming temporary total disability compensation from June 13, 2005, through November 10, 2005.
 *********** EXHIBITS
The following exhibits were admitted into evidence:
 (a) Stipulated Exhibit 1: Form 22 for January 28, 2004, to January 28, 2005
 (b) Stipulated Exhibit 2: Form 22 for June 2, 2004, to June 2, 2005
 (c) Stipulated Exhibit 3: Payroll Registers
 (d) Stipulated Exhibit 4: Industrial Commission Forms
 (e) Stipulated Exhibit 5: Plaintiff's Medical Records
 (f) Stipulated Exhibit 6: Dispensary Records
 (g) Stipulated Exhibit 7: Plaintiff's Discovery Responses
 (h) Stipulated Exhibit 8: Defendants' Discovery Responses
 (i) Plaintiff's Exhibits 1A to 1J: Photographs *Page 3 
 (j) Defendants' Exhibit 1: Pension Agreement
 (k) Defendants' Exhibit 2: Recorded Statement of Plaintiff
 (l) Defendants' Exhibit 3: Job Analysis Card
 (m) Defendants' Exhibit 4: Suspicious Stock Ticket
 (n) Defendants' Exhibit 5: Accident Investigation Report
 *********** ISSUES (a) Whether plaintiff suffered a compensable injury by accident or specific traumatic incident on January 28, 2005.
 (b) Whether plaintiff suffered a compensable injury by accident or specific traumatic incident on or about June 2, 2005.
 (c) To what benefits, if any, plaintiff is entitled.
 (d) Whether defendants are entitled to a credit for any accident and sickness benefits paid to plaintiff during any period of disability resulting from a compensable workers' compensation injury.
 ***********
Based on the foregoing Stipulations and the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was fifty-one years old and had been employed with defendant-employer for over nine years. He initially was employed in the position of press operator, and after approximately one and one-half years moved to the position of Banbury helper where he continued to work through the date of hearing. *Page 4 
2. Plaintiff's job as a batch builder involves heavy work. Plaintiff testified that he worked with hump scrap rubber, buggy scrap, and slab rubber. When working with slab rubber, plaintiff is required to pull from four hundred sixty-five to four hundred eighty-eight pounds of rubber from an overhead loader and fold it back onto a conveyor belt every 1.23 minutes, all night long. He does not have to lift the rubber up to place it on the conveyor, but the rubber is heavy and stiff, and the job of pulling it and getting it onto the conveyor and folded back is heavy work. Plaintiff testified that sometimes the slab rubber pieces have been cut, and pieces frequently come off the overhead loader and fall on his head.
3. Plaintiff testified that hump scrap pieces of rubber usually weigh from fifty to eighty pounds, but that the pieces are often stuck together in "big clumps" which could weigh up to two hundred pounds. Plaintiff had to lift, swing, and throw the pieces of hump scrap onto the conveyor belts. During the deposition of Dr. Kim Koo, defendant described plaintiff's job as involving the lifting of two hundred fifty batches of hump scrap, weighing anywhere from sixty to one hundred pounds, five days a week for eight hour shifts. Although it is unclear from the evidence, it appears that buggy scrap is the same as or was handled the same as hump scrap rubber.
4. On January 28, 2005, plaintiff was putting heavy pieces of hump scrap onto the conveyor or loader belt when he felt the onset of pain in his mid-back, just below and between his shoulder blades. Plaintiff's supervisor completed an Accident Investigation Report which documented that plaintiff reported he was "putting hump scrap onto the loading belt" when his "back started hurting from pulling up on the scrap and got worse as the night progressed. Several of the pieces [of hump scrap] were excessively heavy as well as some stuck ones." *Page 5 
Specifically, the report documented that plaintiff "stated that as he was pulling a piece [of hump scrap] onto the loading belt that he felt a lot of pain in the back area."
5. Plaintiff continued to work following the incident on January 28, 2005, but his back pain became progressively worse, and began to radiate down his left leg. On February 9, 2005, plaintiff was examined by defendant-employer's plant dispensary physician, Dr. Inad Atassi. Dr. Atassi's notes indicate plaintiff injured his back while "lifting hump scrap rubber," and that since that time, plaintiff had been "having pain in his back and Lt leg." Plaintiff was assigned light duty work under restrictions that limited him to no heavy lifting greater than fifteen pounds, and no repetitive bending of the back.
6. On February 16, 2005, plaintiff was again evaluated by Dr. Atassi, who indicated that plaintiff continued to complain of lumbar pain with some radiation into the left hip and thigh. Dr. Atassi recommended a lumbar spine MRI.
7. On March 1, 2005, plaintiff underwent a lumbar spine MRI. The MRI showed "normal marrow signal intensity within the lumbar segments and L3/4 and L5/S1 disc degenerative changes with mild annular bulging at the L5/S1 level."
8. On March 16, 2005, plaintiff returned for follow-up with Dr. Atassi. Dr. Atassi noted that the MRI appeared to be within normal limits. At that time, plaintiff reported that his pain had improved, and Dr. Atassi returned plaintiff to regular duty work.
9. On June 13, 2005, plaintiff requested a pass to go to the plant dispensary. At the dispensary, plaintiff presented with numbness in the fingers of his right hand and right arm pain, which had been present for ten to fifteen days.
10. On June 13, 2005, plaintiff also completed an "Associate Report of Incident" form. On this form plaintiff reported the following: "Last couple of weeks I have been having *Page 6 
shoulder and arm pain. It just started hurting all of a sudden as I was normally putting slab on the belt. The last couple of days I noticed that my fingers were getting numb tingly and I'm having trouble finding a comfortable position to rest my arm in." Plaintiff further reported that this injury occurred on June 2, 2005.
11. In response to Defendant's First Set of Interrogatories concerning how his injury occurred, Plaintiff stated the following: "On the 2nd of June while doing my normal duties as a batch builder, I was pulling some [s]lab rubber from the two skids; they were on up [sic] the overhead loader when I started getting this throbbing pain in my right arm. I assumed I had just pulled a muscle in my shoulder or something. As time went on, my arm became more and more painful to the point of waking me from my sleep in the morning after I left work. I kept on working, taking pain medication as needed until on the night of June 13, 2005, as I was working, my arm started throbbing real bad and my two fingers on my right hand started feeling like there were pins being stuck in them, sort of like they were numb. This kind of scared me so I went to the dispensary."
12. At the hearing of this matter before the Deputy Commissioner, plaintiff testified that the date of June 2, 2005, is an estimate of the date that his shoulder and arm pain began, and that he could not recall a specific incident that caused an onset of the pain. Plaintiff testified, "I thought it was from pulling the rubber up to the loader. That's — like I say, I thought it was a pulled muscle. That's all I thought it was."
13. Based on the greater weight of the evidence, the Full Commission finds that while pulling heavy slab rubber as part of his usual job, during a cognizable period of time on or about June 2, 2005, plaintiff felt pain in his right arm and shoulder which felt as if he had pulled a muscle. The Full Commission finds credible plaintiff's pre-hearing statements and testimony at *Page 7 
the hearing before the Deputy Commissioner that his right arm all of a sudden began to hurt while he was putting slab rubber onto the loader. Since plaintiff's injury is to his cervical spine, the fact that he was doing his normal duties does not defeat his claim or prevent his injury, as indicated by the sudden onset of pain, from being a specific traumatic incident.
14. On June 13, 2005, plaintiff saw Dr. Deborah Morris at MedEx Urgent Care. At the time of his treatment plaintiff had no neck pain and had not considered his neck as being related to his arm pain. Dr. Morris diagnosed radiating neck pain and right arm pain. On June 21, 2005, plaintiff underwent a cervical spine MRI, which revealed "multilevel disc disease and DJD with multilevel multifactorial central and forminal stenosis" with "cord deformity at the C4-5 level where there is a suggestion of very mild myelomalacia." Dr. Morris summarized the MRI as showing a bulging disk pushing on plaintiff's spinal cord. Based upon plaintiff's MRI and his radicular pain symptoms, Dr. Morris referred plaintiff to Dr. Kim Koo, a neurosurgeon at Carolina Neurosurgical Services.
15. On July 11, 2005, plaintiff began treating with Dr. Koo. Dr. Koo reviewed plaintiff's MRI, which "showed that he has fairly large arthritic [osteophytic] bars across the disc space that was causing some pressure on the spinal cord." Dr. Koo testified that osteophytic bars, spurs, and spondylosis all mean the same thing. Based upon his cervical MRI, Dr. Koo testified that most of plaintiff's problems "seemed to be related to the spondylitic changes" in his cervical spine. Dr. Koo testified that the finding of myelomalacia on the MRI probably meant plaintiff had an injury to the spinal cord, which showed up as a high signal on the spinal cord. She further testified that plaintiff's spinal cord injury could have caused numbness and could also have caused pain that radiated into the extremities of his arm, hand, and fingers. *Page 8 
16. On August 11, 2005, plaintiff underwent an anterior cervical diskectomy at C4-5 and C5-6 and fusion with instrumentation, performed by Dr. Koo. Following his surgery, plaintiff continued to treat with Dr. Koo until November 15, 2005. At that time, Dr. Koo indicated that she did not have anything further to offer plaintiff from a neurosurgical prospective, and released him to return on an as-needed basis.
17. With regard to the cause of plaintiff's cervical disc condition for which Dr. Koo performed surgery, Dr. Koo testified that she "would conclude that [plaintiff's] neck problems stem from the June incident rather than the January incident." Dr. Koo was initially confused about plaintiff's history of injury. She did not understand that plaintiff's January report of injury involved his lumbar spine. After clarifying plaintiff's history and course of treatment after his January 28, 2005, injury, Dr. Koo gave the above causation opinion. After listening to plaintiff's response to defendant's interrogatory concerning his June 2005 incident and after being asked to assume that plaintiff does not recall a specific event that caused him to start feeling pain while working on or about June 2, 2005, Dr. Koo testified, "I still maintain there is a neck injury of some sort that he was not able to recall." The Full Commission finds the medical opinion of Dr. Koo that plaintiff's neck injury was caused by the June 2005 incident to be competent, credible, and persuasive. Based upon the greater weight of the evidence of record, including the testimony of Dr. Koo and Dr. Morris, the Full Commission finds that plaintiff's cervical condition, which required surgery, is causally related to and a direct result of a specific traumatic incident of the work assigned to him on or about June 2, 2005. This specific traumatic incident caused an onset of pain in plaintiff's right shoulder and arm which gradually worsened over the next ten to fifteen days to include numbness in the fingers of his right hand, thus causing plaintiff to seek medical attention and eventually to undergo the surgery performed by Dr. Koo. *Page 9 
18. Plaintiff has not been evaluated for a permanent partial disability rating for his cervical condition.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission concludes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained compensable injuries to his back on January 28, 2005, and on or about June 2, 2005, arising out of and in the course of his employment as a direct result of specific traumatic incidents of the work assigned to him by defendant-employer. N.C. Gen. Stat. § 97-2(6). Plaintiff's injury which occurred on or about June 2, 2005, was sudden. There was a specific instance in time when he felt he had pulled a muscle in his arm. The only uncertainty is the exact date the injury occurred, but exact certainty is not required. Fish v. Steelcase,Inc., 116 N.C. App. 703, 449 S.E.2d 233 (1994).
2. As a result of his compensable cervical injury occurring on or about June 2, 2005, plaintiff is entitled to temporary total disability compensation for the periods of time he was out of work due to his cervical condition, from June 13, 2005, through November 10, 2005. N.C. Gen. Stat. § 97-29. In order to receive disability compensation, the employee has the burden of proving the existence of that disability and its extent. Perkins v. U.S. Airways, 177 N.C. App. 205, 628 S.E.2d 402
(2006). The burden may be met in one of four ways: (1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it *Page 10 
would be futile because of preexisting conditions, e.g., age, inexperience, or lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury. Russell v. Lowes ProductDistribution, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993). Plaintiff has produced medical evidence sufficient to prove that he was disabled from all employment from June 13, 2005, through November 10, 2005.
3. Defendants are entitled to a credit for any employer-funded disability plan payments received by plaintiff for any week he is entitled to total disability compensation under the N.C. Workers' Compensation Act. N.C. Gen. Stat. § 97-42. The Commission may, in its discretion, reduce a credit by twenty-five percent (25%) in order to fund an attorney's fee based upon the full workers' compensation award.Church v. Baxter Travenol Laboratories, Inc., 104 N.C.App. 411,409 S.E.2d 715 (1991).
4. As a result of his compensable injuries occurring on January 28, 2005, and on or about June 2, 2005, plaintiff is entitled to payment of medical expenses incurred or to be incurred as may reasonably be required to effect a cure, provide relief, or lessen the period of disability, including the surgery performed by Dr. Koo. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fee approved below and any credit owed defendants for employer funded disability plan payments received by plaintiff, defendants shall pay total disability compensation to plaintiff for the period of time that he was out of work between June *Page 11 
13, 2005, and November 10, 2005, due to his compensable cervical injury that occurred on or about June 2, 2005. The accrued compensation shall be paid in a lump sum.
2. As plaintiff has not been evaluated for a permanent partial disability rating for his cervical condition, this Opinion and Award does not address that issue. However, if in the future the parties are unable to reach an agreement regarding that issue, either party may request a hearing from the Industrial Commission.
3. As a result of his compensable injuries occurring on January 28, 2005, and on or about June 2, 2005, defendants shall pay for medical expenses incurred or to be incurred as may reasonably be required to effect a cure, provide relief, or lessen the period of plaintiff's disability, including the surgery performed by Dr. Koo.
4. A reasonable attorney's fee in the amount of twenty-five percent (25%) is hereby approved for plaintiff's counsel. This fee shall be deducted and paid to plaintiff's counsel from the total accrued compensation before any credit is taken by defendant, and any credit shall be reduced by twenty-five percent (25%).
5. Defendants shall pay the costs due the Commission.
This the ___ day of November, 2007.
 S/______________________
 BERNADINE S. BALLANCE
 COMMISSIONER
CONCURRING:
 S/______________________ DANNY LEE McDONALD *Page 12 
COMMISSIONER
DISSENTING:
 S/______________________ DIANNE C. SELLERS COMMISSIONER *Page 13